LaVon DRENNON

v.

**PHILADELPHIA GENERAL
HOSPITAL et al.**

Civ. A. No. 76–239.

United States District Court,
E. D. Pennsylvania.

Jan. 31, 1977.

Barbara S. Rosenberg, Cherry Hill, N. J., for plaintiff.

Tyler E. Wren, Asst. City Sol., Law Dept., Philadelphia, Pa., for defendants.

## OPINION

A. LEON HIGGINBOTHAM, District Judge.

### I. Introduction

The defendants in this action have filed a Motion to Dismiss both the Complaint and the Amended Complaint for: (1) lack of subject matter jurisdiction; (2) for failure to state a claim upon which relief can be granted; (3) for lack of specificity; and (4) for failure to exhaust both state and federal administrative remedies. The plaintiff contends that she is a highly qualified laboratory technician denied employment at Philadelphia General Hospital solely by reason of her epilepsy. It is claimed that Philadelphia General Hospital and the City of Philadelphia had a policy to deny employment to anyone who had experienced an epileptic seizure within two years from the date of his or her job application. Ms. Drennon was within this group of individuals allegedly denied employment for the above reason. The plaintiff asserts that the procedures and policies of the various defendants deprived her of due process and equal protection under the 14th Amendment, abridged her right to be free from discrimination as a result of a non-job-related disability—a statutory claim under the Rehabilitation Act of 1973, 29 U.S.C. §§ 793 and 794—and violated her rights under 42 U.S.C. § 1983. Along with her response to the defendants' Motion to Dismiss, the plaintiff has filed a Motion to Compel Answers to Interrogatories. After full consideration of the parties' respective motions and briefs filed in support of and in opposition thereto, I must DENY the Motion to Dismiss but STAY these proceedings pending consideration of plaintiff's claims by the Department of Labor. Because of my decision to STAY the present proceedings, I will, at this time, DENY plaintiff's Motion to Compel Answers to Interrogatories, without prejudice to its renewal should plaintiff be entitled to relief in this Court after her administrative remedies have been exhausted.

### II. Plaintiff's Amended Complaint is Valid and She Has Established Subject Matter Jurisdiction

The defendants complain that the plaintiff was not entitled to submit an Amended Complaint to the Court in an attempt to cure jurisdictional defects. However, Rule 15(a) of the F.R.Civ.P. provides that a "party may amend his pleading once as a matter of course at any time before a responsive pleading is served." The Court of Appeals for the Third Circuit long ago rejected the notion that a motion to dismiss constituted a responsive pleading. *Kelly v. Delaware River Joint Commission*, 187 F.2d 93, 94 (3d Cir. 1951); accord, *Beck v. Athens Building Loan & Savings Assn.*, 65 F.R.D. 691, 694 (M.D.Pa.1974) (Nealon, J.). Therefore, the plaintiff did not need the permission of this Court in order to file this first Amended Complaint. Because of this valid amendment to plaintiff's Com-

plaint, the Court need not consider defendants' objections to jurisdiction under §§ 1981 and 1985(3).

■ The defendants assert that the plaintiff has not stated a claim, even in her Amended Complaint, against the City of Philadelphia and Philadelphia General Hospital, a city-owned and operated institution. While the City of Philadelphia and Philadelphia General Hospital are not "persons" within the meaning of § 1983, and therefore not subject to suit thereunder, it is clear that this Court can exercise jurisdiction over both entities under 28 U.S.C. §ʹ 1331. See *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512–514, 93 S.Ct. 2222, 2226–2227, 37 L.Ed.2d 109 (1973).

Apparently various judges in this district have expressed divergent opinions on whether a municipality can be held subject to general federal question jurisdiction under 28 U.S.C. § 1331(a), and thus subject to suit for damages for an alleged violation of a plaintiff's 14th Amendment rights—a cause of action which would, if municipalities are included within the ambit of § 1331, arise under the United States Constitution. See *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31, 44 (3d Cir.), *remanded on other grounds*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975), *vacated on other grounds*, 538 F.2d 53 (3d Cir. 1976); *Maybanks v. Ingraham*, 378 F.Supp. 913 (E.D.Pa.1974) (Lord, J.); *Patterson v. City of Chester*, 389 F.Supp. 1093 (E.D.Pa.1975) (Weiner, J.); *Stretz v. Bristol Township*, Civil Action No. 76–3414 (E.D.Pa. filed January 10, 1977) (Fullam, J.); but see *Pitrone v. Mercadante*, 420 F.Supp. 1384 (E.D.Pa. 1976) (Ditter, J.); *Anderson v. Erwin*, Civil Action No. 76–2020 (E.D.Pa. filed December 20, 1976) (Van Artsdalen, J.). The comments of the Court of Appeals for the Second Circuit on this issue, in *Brault v. Town of Milton*, 527 F.2d 730, 735, *rev'd on other grounds on reconsideration en banc*, 527 F.2d 736 (2d Cir. 1975), are most instructive. The court found that certain land owners had stated a cause of action against the municipality under § 1331(a) for infringement of their property rights under

the Due Process Clause of the Fourteenth Amendment. The court, considering the very arguments on the history of 42 U.S.C. § 1983 raised by Judge Ditter in his opinion in *Pitrone*, found that:

Bell v. Hood [327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939;] and *Bivens* [*v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)], itself, moreover, caution against assuming that Congress' exemption for municipalities under § 1983 informed its efforts four years later in establishing federal question jurisdiction. For while Congress placed suits against federal officials beyond the scope of § 1983 with no less—and, indeed, probably far more—clarity than it proscribed suits against municipalities, the Court in these two cases confirmed that § 1331 vested federal jurisdiction over civil rights actions against federal officers. We reject the view, therefore, that municipalities enjoy any special status which would immunize them from suits to redress deprivations of federal constitutional rights. See *City of Kenosha v. Bruno*, 412 U.S. 507, 516, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) (concurring opinion of Brennan & Marshall, JJ.) (other citations omitted).

Until there is an authoritative interpretation of the limits, if any, of § 1331 jurisdiction over municipalities by the Court of Appeals for the Third Circuit and/or by the United States Supreme Court, I am unwilling to read the footnote in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, n. 3, 49 L.Ed.2d 276 (1976), so broadly as to preclude the exercise of § 1331 jurisdiction over a municipality. The pertinent footnote appearing in the majority opinion in *Aldinger* reads as follows:

. . . Thus, neither the district court nor the court of appeals reached the question whether the complaint stated a cause of action over which § 1331 jurisdiction would lie. Petitioner did not raise the question in her petition for certiorari, and it is therefore not before us.

As Judge Fullam recently pointed out, that footnote can be read as either undermining

the "holding" of *City of Kenosha v. Bruno, supra,* (which affords, by implication, a cause of action against municipalities for violations of 14th Amendment rights pursuant to § 1331, despite the lack of such an action under § 1983), or as limiting the precedential value of *Aldinger* in any discussion of the limits of § 1331. *Stretz v. Bristol Township, supra,* at 4. I conclude that the latter interpretation of *Aldinger* is appropriate and reject the position "that municipalities enjoy any special status which would immunize them from suits to redress deprivations of federal constitutional rights;" the plaintiff in this case states a colorable cause of action against the City of Philadelphia and Philadelphia General Hospital under § 1331. The proper jurisdictional amount has been alleged and the nature of the claims (for lost wages plus interest since approximately October, 1973, coupled with a claim for damages for loss of reputation), precludes this Court from finding to a legal certainty that the $10,000,000 jurisdictional amount cannot possibly be met by the existing allegations of the Amended Complaint. In view of the allegation of 14th Amendment violations, and the purported breaches of 29 U.S.C. §§ 793 and 794,[1] the plaintiff's claims obviously arise under the Constitution and laws of the United States. That violations of a person's constitutional rights can give rise to a cause of action for damages against a city and a municipal agency or instrumentality has been well established. *Skehan v. Board of Trustees of Bloomsburg State College, supra; Everett v. City of Chester,* 391 F.Supp. 26, 29 (E.D.Pa.1975) (Bechtle, J.); see *City of Kenosha, Wisconsin v. Bruno, supra.* The City of Philadelphia, as well as Philadelphia General Hospital, is a proper party to this suit since it is alleged that the policies and practices about which plaintiff complains are not only those of the hospital but also those of the City. Furthermore, it is averred that plaintiff's rejection for employment barred her not only from employment at Philadelphia General Hospital but also from all municipal employment. The named defendants in this action are employed by entities within the City and paid from City funds. The Court, therefore, without more information, cannot grant a motion to dismiss this action against the City.

Finally, the defendants cannot seriously contend that the plaintiff's twenty page Amended Complaint should be dismissed for lack of specificity. Certainly the Amended Complaint is more than a series of conclusionary allegations; the defendants are

---

1. § 793 provides:

§ 793. *Employment under Federal contracts*
(a) Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(6) of this title. The provisions of this section shall apply to any subcontract in excess of $2,500 entered into by a prime contractor in carrying out any contract for the procurement of personal property and nonpersonal services (including construction) for the United States. The President shall implement the provisions of this section by promulgating regulations within ninety days after September 26, 1973.
(b) If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto.
(c) The requirements of this section may be waived, in whole or in part, by the President with respect to a particular contract or subcontract, in accordance with guidelines set forth in regulations which he shall prescribe, when he determines that special circumstances in the national interests so require and states in writing his reasons for such determination.
§ 794 reads as follows:
§ 794. *Nondiscrimination under Federal grants*
No otherwise qualified handicapped individual in the United States, as defined in section 706(6) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

more than apprised of the alleged abridgements of plaintiff's rights.

## III. Does the Plaintiff State a Cause of Action Under the 14th Amendment and § 1983?

█ In recent years there have been increasing tensions in attempting to define with specificity the rights which persons are guaranteed by the equal protection and due process provisions of the 14th Amendment.[2] As one reads the abstract pronouncements in behalf of liberty, due process and property or the condemnation against governmental arbitrariness there is very little guidance for those cases which courts have not previously considered and probably never anticipated. On the level of pure abstraction we can find language in cases, always arising in quite different factual situations, which state that "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974); See also *Zannino v. Arnold*, 531 F.2d 687, 690 (3d Cir. 1976). But the "arbitrary actions of government" in *Wolff v. McDonnell* pertained to a prisoner's losing good time credit or the imposition of solitary confinement—thus a different milieu than the present case.

In contrast to the broad condemnation of arbitrary conduct by the government as announced in *Wolff*, only last term a majority of the Supreme Court said that:

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review of every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions. (footnote omitted)

*Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976). Thus, in this case, was the conduct of the City of Philadelphia and Philadelphia General Hospital an "arbitrary act of government" as condemned in *Wolff*, or was it merely an "ill-advised personnel decision" or one of the "numerous individual mistakes . . . inevitable in the day to day administration of our affairs" which are not "constitutionally protected rights?"

The Court is faced in this case with the precise issue whether the City of Philadelphia and Philadelphia General Hospital's alleged flat prohibition against the employment of persons who had epileptic seizures less than two years prior to the date of application is a violation of the plaintiff's substantive due process and equal protection rights and those of the purported class members. Although this specific plaintiff may not have a right to public employment, that is not the question in this case; the issue is only whether the government acted lawfully in denying her employment.[3] That certain arbitrary classifications denying em-

2. See, as an example, the plurality opinion of the Court of Appeals for the Third Circuit pertaining to long hair in the public schools, *Zeller v. Donegal School Dist. Board of Education*, 517 F.2d 600 (3d Cir. 1975) (en banc).

3. See *Bishop v. Wood*, supra, 96 S.Ct. at 2079, where the Court stated:

In *Board of Regents v. Roth*, 408 U.S. 564 [92 S.Ct. 2701, 33 L.Ed.2d 548], we recognized that the nonretention of an untenured college teacher might make him somewhat less attractive to other employers, but nevertheless concluded that it would stretch the concept too far "to suggest that a person is deprived of 'liberty' when he simply is not retained in one position but remains as free as before to seek another." This same conclusion applied to the discharge of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge. (citations omitted).

ployment are prohibited has clearly been set forth by the U. S. Supreme Court in *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) and in *Turner v. Dept. of Employment Sec. and Bd. of Review of Indus. Commission of Utah*, 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975). Obviously pregnant persons are not the only individuals entitled to challenge state action as a violation of an individual's 14th Amendment right to substantive due process and equal protection of the laws.[4] Recently, the Court of Appeals for the Third Circuit held that an action brought by a handicapped person charging arbitrary, unreasonable and discriminatory classification of blind persons, in alleged violation of both 42 U.S.C. § 1983 and the 14th Amendment, stated a cause of action and would withstand a motion to dismiss lodged by individual defendants. See *King-Smith v. Aaron*, 455 F.2d 378, 381–382 (3d Cir. 1972); see also *Frederick L. v. Thomas*, 408 F.Supp. 832 (E.D.Pa.1976), in which Judge Newcomer found that a cause of action had been stated and denied a motion to dismiss (treated as a motion for judgment on the pleadings), after a trial of a 14th Amendment claim brought by children with specific learning disabilities against the School District of Philadelphia. Finally Judge Newcomer recently entertained and tried an action brought by the visually handicapped in which the School District of Philadelphia was charged with abridging the 14th Amendment, and individual defendants were charged with violations of both the 14th Amendment and § 1983. *Gurmankin v. Costanzo*, 411 F.Supp. 982 (E.D.Pa.1976). Just as the Court of Appeals in *King-Smith v. Aaron, supra*, stated that it expressed no opinion on the merits of the claim, I cannot here conclude that plaintiff has no cause of action, nor do I conclude that plaintiff will ultimately prevail. I find that within the context of this Motion to Dismiss, plaintiff's Amended Complaint states a cause of action, but this judgment is without prejudice to reconsidering this issue after the City and PGH have come forward with evidence explaining their policies, if there are any, with respect to epileptics. At this stage, plaintiff has a cause of action under the 14th Amendment, and, in the case of the individual defendants, under § 1983.

## IV. Plaintiff States A Colorable Cause of Action Under 29 U.S.C. §§ 793 and 794

The United States Supreme Court, in an opinion by Mr. Justice Brennan, recently outlined the standards for determining whether a statute authorized an implicit private action in court. In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 2087–2088, 45 L.Ed.2d 26 (1975),[5] Mr. Justice Brennan held:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted" . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one. Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the

---

4. The United States Supreme Court has recently held that the procedural due process rights of public employees discharged without a hearing are not unlimited in scope. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684, supra; cf. *Paul v. Davis, III*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). However, the Court specifically held, in an opinion by Mr. Justice Rehnquist, that the discussion of the Court in *Paul* was limited to a consideration of the *procedural guarantees* of the Due Process Clause and was not intended to describe "those substantive limitations upon state action which

may be encompassed within the concept of 'liberty' expressed in the Fourteenth Amendment." 96 S.Ct. at 1165, n. 5. That same limitation would seem to apply, with equal force, to the procedural due process holding in *Bishop v. Wood*, supra.

5. The Court of Appeals for the Third Circuit recently applied the standards articulated in *Cort v. Ash* in order to determine whether an implied right of action existed under the Federal Aviation Act in *Rauch v. United Instruments, Inc.*, 548 F.2d 452 (3d Cir. 1976).

plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law? (citations omitted; emphasis in the original)

That persons with epilepsy are considered handicapped is too self-evident to be contested. See Epilepsy Foundation of America, *Behind the Stigma of Epilepsy* (1975); Epilepsy Foundation of America, *Basic Statistics on the Epilepsies* (1975). See 29 U.S.C. § 706(6) for a definition of the handicapped individual. It is also clear from the statement of the Committee on Labor and Public Welfare, in its report to the Senate on the Amendment of the Rehabilitation Act of 1973, that the legislators anticipated and approved of inclusion of a private right of action as a means to enforce 29 U.S.C. § 794:

> This approach to implementation of Section 504 which closely follows the models of the above cited antidiscrimination provisions [i. e. Section 601 of the Civil Rights Act of 1964, 42 U.S.C. 2000d, and Section 903 of the Education Amendments of 1972, 20 U.S.C. 1683], would insure administrative due process (right to hearing, right to review) provide for administrative consistency within the Federal government as well as relative ease of implementation and *permit a judicial remedy through a private action* (emphasis added). 120 Cong.Rec. 30534.[6]

Although the legislative history does not mention § 793, that factor does not negate the existence of a private cause of action

under that statute. Mr. Justice Brennan in *Cort v. Ash, supra*, held that:

> in situations in which it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to *deny* such cause of action would be controlling. 95 S.Ct. at 2090 (emphasis in the original; footnote omitted).

The remedy sought in this case, the employment of plaintiff and members of her class in positions from which they were purportedly excluded in violation of the Rehabilitation Act, could not better foster the goals of the legislation in question. And, finally, that the area was one not traditionally controlled by the State of Pennsylvania is evidenced by the inclusion, only recently, of the employment of handicapped persons as one of the goals to be fostered by the Pennsylvania Human Relations Act. Courts have previously recognized the federal government's interest in preventing discrimination, on the basis of race, color or national origin, in employment in federally assisted activities and programs and, consequently, have implied a right of action under Title VI of the Civil Rights Act of 1964, 42 U S.C. § 2000d.[7] See *U.S. by Clark v. Frazer*, 297 F.Supp. 319 (M.D.Ala.1968) where the court held that the Attorney General had standing to bring an action to enforce federal statutes and regulations which required state personnel, engaged in the administration of federally financed grant-in-aid programs, to recruit, hire and promote or demote personnel on merit, without regard to race or color; *supp'd. sub nom. U.S. by Mitchell v. Frazer*, 317 F.Supp.

---

6. This portion of the legislative history of the two pertinent sections also indicates that Congress did not view administrative remedies as exclusive avenues for relief. Therefore, causes of action under the 14th Amendment and 42 U.S.C. § 1983 are not contra-indicated. Furthermore, contrary to the defendants' contention, both sections 793 and 794 are concerned with employment. The general purposes of the Rehabilitation Act are set forth in 29 U.S.C. § 701(8) and include the promotion and expansion of employment opportunities in the public and private sector. See *Gurmankin v. Costanzo*, supra, at 989.

7. Title VI provides in pertinent part:

**§ 2000d. Prohibition against exclusion from participation in, denial of benefits of, and discrimination under Federally assisted programs on ground of race, color, or national origin** No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 42 U.S.C. § 2000d.

1079 (M.D.Ala.1970) where the court held for plaintiff on the merits; *supp'd. sub nom. NAACP v. Allen*, 340 F.Supp. 703 (M.D.Ala.1972), *aff'd* 493 F.2d 614 (5th Cir. 1974); See also *Wade v. Mississippi Co-op. Extension Service*, 372 F.Supp. 126 (D.Miss. 1974), *aff'd in part and rem'd in part*, 528 F.2d 508 (5th Cir. 1976), an action against a state agency, operating an agricultural and home economic extension service, and other defendants for declaratory and injunctive relief to eliminate statewide racial discrimination in employment and promotion practices of the agency, among other claims.

Other judges have found an implied right of action under 29 U.S.C. § 794. See *Gurmankin v. Costanzo, supra*; see also *Rhode Island Society for Autistic Children v. Board of Regents for Education for the State of Rhode Island*, Civil Action No. 5081 (D.R.I. filed August 1, 1975). Given this overwhelming data in favor of implying a cause of action under both 29 U.S.C. §§ 793 and 794, it cannot be disputed that Ms. Drennon has stated such a cause of action, but is not entitled to judicial relief because of her failure to exhaust her federal administrative remedies.

## V. Exhaustion of Administrative Remedies, the Doctrine of Primary Jurisdiction and the Court's Present Inability to Grant Relief

### A. State Remedies

■ The defendants argue that this entire action should be barred from consideration because of plaintiff's failure to exhaust her prior state and federal administrative remedies. As for the claim that state remedies were not exhausted, at the time plaintiff alleges that she was initially injured, no state administrative remedy existed. The Pennsylvania Human Relations Act did not foster the employment of handicapped individuals "in accordance with their fullest capacities" regardless of their disability until December 19, 1974—more than eleven months after plaintiff took the qualifying examination to become a lab technician. 43 P.S. § 951 and 952, as amended. There is no indication in the legislative history that

the statute is to be retroactively applied. In fact, Pennsylvania has a provision on statutory construction which states:

> No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly. 1 Pa.C.S.A. § 1926.

Since there is no clear indication that the amendment to the Pennsylvania Human Relations Act should be given retroactive application, and given that the statute is substantive, rather than procedural and remedial, in nature (in that it adds a new category of individuals to those protected under the statute in question), the plaintiff cannot be required to resort to the state administrative tribunal for assistance—the statute cannot be given retroactive effect. Failure to exhaust now-existing federal administrative remedies poses a different problem for the Court. ⁊

### B. Federal Remedies

■ Since this Court clearly has jurisdiction under the 14th Amendment and § 1983 without implication of jurisdiction under 29 U.S.C. §§ 793 and 794, the implication of a judicial remedy under §§ 793 and 794 seems consistent with the principles articulated in *Cort v. Ash, supra*, and the administrative remedy afforded under 29 U.S.C. § 793 does not appear to be exclusive, the defendant actually raises the doctrine of primary jurisdiction as a present bar to consideration of the plaintiff's claims by the Court. The Court of Appeals for the Third Circuit clearly articulated the doctrine of primary jurisdiction in an opinion by Judge Van Dusen, *MCI Communications Corporation v. American Telephone & Telegraph Co.*, 496 F.2d 214, 220 (3d Cir. 1974):

> The doctrine of primary jurisdiction has been developed by courts in order to avoid conflict between the courts and an administrative agency arising from either the court's lack of expertise with the subject matter of the agency's regulation or from contradictory rulings by the agency and the court. Under the doctrine, a court should refer a matter to an administrative agency for resolution,

*even if the matter is otherwise properly before the court*, if it appears that the matter involves technical or policy considerations which are beyond the court's ordinary competence and within the agency's particular field of expertise. (emphasis added)

Later, in that same opinion, Judge Van Dusen found that *even if the matters raised in the complaint are within the ordinary experience of the judiciary* "the Supreme Court has indicated that the primary jurisdiction doctrine may be applicable in such a situation." *MCI Communications Corp. v. American Telephone & Telegraph Co., supra*, 496 F.2d at 223.

Even though district courts often consider claims of arbitrary and unreasonable actions on the part of the government, § 1983 violations, and equal protection claims, and courts within this very district have considered cases involving 29 U.S.C. § 794, this Court must defer decision on the plaintiff's various claims until such time as the Department of Labor has had the opportunity to consider those matters.[8]

The administrative agency is not precluded from considering the plaintiff's claims, despite the fact that no remedies were available at the time this lawsuit was filed. In *Cort v. Ash, supra*, the Supreme Court considered the claim of a stockholder seeking both injunctive relief and damages for an alleged violation of a criminal statute prohibiting corporate expenditures in campaigns for federal office. At the time the lawsuit was filed there was no statutory provision for civil enforcement of the act in question. However, prior to the Supreme Court's decision of the matter, the Congress established a Federal Election Commission which had an administrative procedure for

processing private complaints of alleged violations of the criminal statute governing federal elections. The Supreme Court, reiterating a long-established principle, held that:

"a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." There is no "statutory direction or legislative history to the contrary" in or respecting the Amendments, nor is there any possible "manifest injustice" in requiring respondent to pursue with respect to alleged violations which have yet to occur the statutory remedy for injunctive relief created by the Amendments.

*Cort v. Ash, supra*, 95 S.Ct. at 2087. In this case the procedure for enforcing 29 U.S.C. § 793 was not promulgated until April 16, 1976, whereas the complaint in this action was filed on January 26, 1976. Although the regulation under which the plaintiff would seek relief in this case specifies a 180 day limitation for the filing of claims, the regulation also specifies that the director may extend the time for filing a claim upon "good cause shown." 41 C.F.R. § 60–741.26(a). No more "good cause" can be imagined than that apparent in this case, namely that the regulation had not been adopted at the time the alleged injury was suffered. As in *Cort v. Ash*, the plaintiff in this case also has recourse to injunctive relief. In *Cort*, if the Federal Election Commission found that some form of violation existed, the Commissioner could petition the Attorney General to seek injunctive relief in federal court. In the present action, the Director of the Department of Labor has the authority to "seek appropriate judicial ac-

---

8. The Court of Appeals for the Third Circuit has authorized the retroactive application of certain statutes in the past where that statute did not create new substantive rights for the party, but only constituted an enactment that was procedural in nature. § 793(b) specified that: "If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a com-

plaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto." 29 U.S.C. § 793(b). That statute, and the substantive right to file a complaint thereunder with the Department of Labor, was in effect as of September, 1973, one month prior to the plaintiff's alleged injury.

**818**

tion to enforce the contractual provisions set forth in 41 C.F.R. § 60–741.28(b)." There is no "manifest injustice" in requiring plaintiff to seek administrative relief in the first instance, since the Court is retaining jurisdiction of this action. The Court of Appeals for the Third Circuit has previously held that:

> The requirement that Barnes exhaust his administrative remedies thus affects only the timing, not the effectiveness of judicial review. The delay, of course, is not without cost and we regret the additional pecuniary hardship and stress imposed upon Barnes. We are bound, however, by the holding of the Supreme Court that such costs do not constitute irreparable injury.

*Barnes v. Chatterton*, 515 F.2d 916, 921 (3d Cir. 1975). Certainly the holding in the above case would apply with more force in this instance, for the plaintiff is not only assured of judicial review of an administrative determination should agency remedies prove inadequate, but also may be entitled to a *de novo* consideration of the issues raised on the administrative level because of the existence of an independent cause of action under the 14th Amendment and § 1983. Finally, there is no indication that retroactive application of the statute was found to be undesirable by the legislature.

The necessity for administrative consideration of the plaintiff's claim is particularly acute in this case, since the nature of the federal contractual arrangement between Philadelphia General Hospital and the government is, to date, unclear. While the plaintiff alleges that Philadelphia General Hospital receives in excess of $2500 in "federal financial assistance for its clinical and research activities" from the federal government (Plaintiff's Complaint, Doc. # 11, ¶ 11), and this Court notes that the nonpersonal services covered under § 793 of the Rehabilitation Act of 1973 include research, 41 C.F.R. § 60–741.2, the defendant draws a distinction between federal contracts and *federal grants*. A construction of the agency statute would be particularly helpful in disposing of plaintiff's claims.

Finally, although no administrative remedy is yet prescribed under 29 U.S.C. § 794, and the ambit of § 794 is different from that of § 793, see 41 C.F.R. § 60–741.1, nonetheless there are common issues which permeate plaintiff's claims under both sections of the Rehabilitation Act. One of the purposes of the doctrine of primary jurisdiction, namely the avoidance of contradictory agency and judicial determinations, would seem to be thwarted by an immediate consideration by this Court of plaintiff's claims under 29 U.S.C. § 794. The complaint under both sections of the Rehabilitation Act arises from the same event—the denial of municipal employment by reason of plaintiff's epileptic seizures. Although the standards to be applied under each section of the statute may differ, the critical facts for consideration are the same in each instance and would best be detailed in an agency proceedings.

In light of the doctrine of primary jurisdiction, the present action is STAYED and the plaintiff's claim is REMANDED to the Director of the Department of Labor for consideration without regard to the 180 limitation appearing in 41 C.F.R. § 60–741.-26(a).