Terrance STUBBS, a minor, by Josephine Goolsby, his mother and guardian, and Josephine Goolsby, Plaintiffs,

v.

Caryl M. KLINE, Individually and in her capacity as Secretary of Education of the Commonwealth of Pennsylvania, Department of Education of the Commonwealth of Pennsylvania, the State Board of Education of the Commonwealth of Pennsylvania, Frank S. Manchester, Individually and in his capacity as Deputy Secretary and Commissioner for Basic Education, Gary J. Makuch, Individually and in his capacity as Director of the Bureau of Special and Compensatory Education, William Ohrtman, Individually and in his capacity as Chief of the Special Education Programs and Services Division, Sto-Rox School District, Theodore Telep, in his capacity as superintendent of the Sto-Rox School District, Allegheny Intermediate Unit, the Home for Crippled Children, and the Highland School, Defendants.

Civ. A. No. 78–431.

United States District Court, W. D. Pennsylvania.

Dec. 28, 1978.

Goolsby, filed an original and amended complaint against the Department of Education and the State Board of Education of the Commonwealth of Pennsylvania (hereinafter Commonwealth agencies), four individual officers of those agencies, the Sto-Rox School District, the Superintendent of the School District, the Allegheny Intermediate Unit (AIU), the Home for Crippled Children, and the Highland School. The action was instituted pursuant to: (1) the Education of the Handicapped Act;[1] (2) the Rehabilitation Act of 1973;[2] (3) 42 U.S.C. § 1983; (4) 28 U.S.C. § 1331; (5) the United States Constitution and (6) the laws of the Commonwealth of Pennsylvania. Plaintiffs allege that defendants denied Terrance Stubbs a free appropriate education from September of 1977 to May of 1978 in violation of the laws and Constitution of the United States and the Commonwealth of Pennsylvania. Nominal, compensatory and punitive damages are demanded.[3] Presently before the court are the Rule 12(b) motions to dismiss of the following defendants: (1) the Commonwealth agencies; (2) the individual officers of those agencies; (3) the Allegheny Intermediate Unit; and (4) the Home for Crippled Children.

Richard J. Federowicz, Neighborhood Legal Services, Pittsburgh, Pa., for plaintiffs.

Jack E. Solomon, Asst. Atty. Gen., Thomas M. Rutter, Jr., David L. Lichtenstein, Pittsburgh, Pa., Ernest N. Helling, Asst. Atty. Gen., Harrisburg, Pa., Martha A. Zatezalo, Pittsburgh, Pa., for defendants.

## OPINION

ZIEGLER, District Judge.

### I. History of Case

Plaintiffs, Terrance Stubbs, a handicapped child, and his mother, Josephine

### II. Statement of Facts

It is well established that in considering a motion to dismiss a district court must assess the allegations of the complaint in a light most favorable to the plaintiff and may not dismiss unless it appears that no facts are alleged which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Applying these principles to the instant case, the original and amended complaint aver that Terrance Stubbs is a handicapped child who resides in the Sto-Rox School District. He attended the Highland School from November of 1976 until August, 1977,

1. 20 U.S.C. § 1401 et seq.

2. 29 U.S.C. § 794.

3. The relief which plaintiffs seek is entirely prospective. Although the original and amended complaint demand that defendants provide minor-plaintiff with a free, appropriate education, such relief is moot since plaintiff was admitted to the Home for Crippled Children on May 1, 1978.

at which time he was unlawfully excluded from that institution. On September 28, 1977, the Sto-Rox School District recommended the assignment of minor-plaintiff to the Home for Crippled Children. Plaintiff's mother approved the transfer on October 3, 1977. From September of 1977 through April of 1978, Carl DiJulio, psychologist of the Sto-Rox School District, contacted officials at AIU concerning Terrance Stubbs. AIU was asked to formulate an interim placement for Terrance and also to participate in the development of an Individualized Education Program (IEP), neither of which were done. The Home for Crippled Children was also requested to assist in the formulation of an IEP, which it similarly failed to do.

On November 2, 1977, plaintiff's mother requested a due process hearing pursuant to 20 U.S.C. § 1415(b)(2)[4] concerning denial of a free appropriate education for her child. The hearing was conducted on January 25, 1978, and a decision was rendered in February of 1978 which required: (1) placement of Terrance Stubbs in the Home for Crippled Children as soon as possible; (2) interim placement of minor-plaintiff; and (3) development of an IEP.

On March 1, 1978, the Division of Special Education of the Department of Education of the Commonwealth of Pennsylvania received an application for placement of Terrance at the Home for Crippled Children. The Department did not approve the placement and funding until March 28, 1978. Moreover, plaintiffs allege that individual officers of the Commonwealth had knowledge that the child was not receiving a free appropriate education as early as September of 1977. On May 1, 1978, Terrance Stubbs was admitted to the Home for Crippled Children as a resident student.

Plaintiffs allege that the policies and procedures described above transgressed federal and state law. Specifically, they assert that: (1) the exclusion of Terrance Stubbs from the Highland School was without notice as required by state law;[5] (2) the Sto-Rox School District, AIU, and the Home for Crippled Children failed to formulate an IEP for Terrance Stubbs;[6] (3) the Department of Education scheduled the due process hearing of January 25, 1978, beyond the time prescribed by Pennsylvania law;[7] and (4) the officers of the Commonwealth agencies were aware as early as September of 1977, that Terrance Stubbs was being denied a free appropriate education, but failed to respond to plaintiff's predicament as required by law.[8]

### III. Discussion

Various defendants contend that Terrance Stubbs and his mother have failed to state a claim upon which relief can be granted. The Commonwealth agencies and its officers also assert that the Eleventh Amendment is a bar to plaintiffs' claims. In the alternative, the officers of the Commonwealth assert a qualified immunity as a defense.

We hold: Count I must be dismissed as to all defendants, including those defendants who have not moved to dismiss since this court lacks subject matter jurisdiction, *Carlsberg Resources Corp. v. Cambria Sav. & L.,* 554 F.2d 1254 (3d Cir. 1977); Counts II through VI must be dismissed as to the Commonwealth agency defendants. The motions to dismiss of the remaining defendants as to Counts II through VI will be denied. We must stay, however, the pro-

---

4. The section provides:

> Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency. No hearing conducted pursuant to the requirements of this paragraph shall be

> conducted by an employee of such agency or unit involved in the education or care of the child.

5. ¶ 20 of plaintiffs' amended complaint.

6. ¶ 25, ¶ 26 of plaintiffs' amended complaint.

7. ¶ 28 of plaintiffs' amended complaint.

8. ¶¶ 38–42 of plaintiffs' amended complaint.

ceedings against those defendants pending consideration of plaintiffs' claims by the Department of Health, Education, and Welfare (HEW).

### A. Subject Matter Jurisdiction Under The Education of Handicapped Act

Plaintiffs assert that this court has original subject matter jurisdiction to adjudicate their claims pursuant to the Education of the Handicapped Act. 20 U.S.C. § 1401, et seq. We disagree.

Section 615 of the Act provides that, whenever a complaint is filed concerning the treatment of a handicapped child, the parents or guardian "shall have an opportunity for an impartial due process hearing . . . conducted by the State educational agency or by the local educational agency or intermediate education unit, as determined by State law . . . ." 20 U.S.C. § 1415(b)(2). As the amended complaint states, plaintiff's mother requested and received a due process hearing on January 25, 1978. The hearing was conducted in accordance with Pennsylvania law. *See,* 22 Pa.Code § 13.31. A favorable decision was rendered in February of 1978.[9]

Section 1415(e)(1) of the Act, which is relied on by plaintiffs, provides as follows:

A decision made in a hearing conducted pursuant to paragraph (2) of subsection (b) of this section shall be final, except that any party involved in such hearing may *appeal* such decision under the provisions of subsection (c) and paragraph (2) of this subsection. A decision made under subsection (c) of this section shall be final, except that any party may bring an action under paragraph (2) of this subsection. (emphasis added).

A district court has jurisdiction over such "appeals" without regard to the amount in controversy. 20 U.S.C. § 1415(c)(2) and (4). However, as the language of Section 1415(e)(1) indicates, jurisdiction extends only to appeals from decisions rendered at the due process hearing. 20 U.S.C.

§ 1415(e)(1); *see, Eberle v. Board of Public Ed. of Sch. Dist., Etc.,* 444 F.Supp. 41 (W.D. Pa.1977).

In the instant case, plaintiffs were afforded a due process hearing and are obviously not appealing the favorable determination. Since the Act provides no basis for original jurisdiction of plaintiffs' claims against any of the defendants on any other basis, Count I of plaintiffs' amended complaint must be dismissed.

### B. Plaintiffs' Cause of Action Under the Fourteenth Amendment and 42 U.S.C. § 1983

The Court of Appeals for the Third Circuit has held that an action brought by a handicapped person charging arbitrary, unreasonable and discriminatory classification of handicapped persons is cognizable under both 42 U.S.C. § 1983 and the Fourteenth Amendment. *See, e. g., Gurmankin v. Costanzo,* 556 F.2d 184 (3d Cir. 1977); *King-Smith v. Aaron,* 455 F.2d 378 (3d Cir. 1972); *see also, Frederick L. v. Thomas,* 408 F.Supp. 832 (E.D.Pa.1976) *aff'd* 557 F.2d 373 (3d Cir. 1977); *Drennon v. Philadelphia General Hospital,* 428 F.Supp. 809, 814 (E.D. Pa.1977).

The Commonwealth agencies are immune from suit, however, unless the state has waived its Eleventh Amendment immunity, *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and the Supreme Court has declined to treat § 1983 as a constructive waiver of sovereign immunity. *Edelman v. Jordan, supra.* Moreover, the General Assembly of Pennsylvania has recently enacted Act 152 which creates a limited form of sovereign immunity within the state courts, while explicitly preserving the Eleventh Amendment immunity from suit in a federal forum. Section 5(e) of the Act provides:

Nothing contained in this act shall be construed to waive the Commonwealth's immunity from suit in Federal courts guaranteed by the eleventh amendment to the United States Constitution.

---

9. *See,* ¶¶ 27, 32 and 34 of plaintiffs' amended complaint.

Accordingly, we hold that, since the Commonwealth has not waived its Eleventh Amendment immunity, Counts III and V of plaintiffs' amended complaint must be dismissed as to the Commonwealth agency defendants.[10]

The status of the individual officers of the Commonwealth requires a separate analysis. An action may be barred by the Eleventh Amendment even though a state is not a party where the action, in essence, seeks recovery from the state. *Edelman v. Jordan, supra; West v. Keve,* 571 F.2d 158 (3d Cir. 1978). However, the Eleventh Amendment is no impediment to a damage suit against state officials in their individual capacities. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Inasmuch as plaintiffs have sued the officers of the Commonwealth in their individual capacities and have alleged knowledge that Terrance Stubbs was denied a free, appropriate education, we cannot conclude at this stage of the proceedings that these officers did not grossly abuse the powers of their respective offices. *See, Scheuer v. Rhodes, supra.*

The individual officers urge, however, that the defense of "qualified immunity" bars the instant action. We disagree.

The Court of Appeals has held that, since good faith is an affirmative defense, the determination of that issue must await proceedings beyond a Rule 12(b)(6) motion. *See, Fidtler v. Rundle,* 497 F.2d 794, 801 (3d Cir. 1974); *Safeguard Mutual Insurance Co. v. Miller,* 472 F.2d 732, 734 (3d Cir. 1973). The motions to dismiss of the individual Commonwealth defendants, the AIU and the Home for Crippled Children must be denied.[11]

## C. Plaintiffs' Cause of Action Under 29 U.S.C. § 794

In Count II of plaintiffs' amended complaint, plaintiffs assert a cause of action based on § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. That section provides:

No otherwise qualified handicapped individual in the United States, as defined in section 706(6) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

Although the statute does not provide a private cause of action in express terms, a number of courts have implied such a right. *Lloyd v. Regional Transp. Authority,* 548 F.2d 1277 (7th Cir. 1977); *Kampmeier v. Nyquist,* 553 F.2d 296 (2d Cir. 1977); *Drennon v. Philadelphia General Hospital, supra.* We find the reasoning of these courts to be persuasive; accordingly, we hold plaintiffs have stated a cause of action under 29 U.S.C. § 794.

The Commonwealth agency defendants assert, here again, immunity from suit under § 504 by reason of the Eleventh Amendment. Plaintiffs rejoin that, since the Act was enacted pursuant to the Fourteenth Amendment, § 504 should be construed as a constructive waiver of sovereign immunity in accordance with *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1975). We disagree.

*Fitzpatrick* involved claims of sex discrimination arising under the 1972 Amendments to Title VII of the Civil Rights Act of 1964. There the defendants were the Chairman of the Connecticut State Employees Retirement Commission and the Treasurer and Comptroller of the State of Connecticut. The Supreme Court held that the 1972 Amendments, which expressly imposed

---

**10.** The same analysis mandates dismissal of Counts IV and VI which are based on Pennsylvania law because these claims are barred by the Eleventh Amendment. Moreover, in light of our holding, we need not address defendants' contention that the Commonwealth is not a "person" under § 1983.

**11.** The same analysis applies with equal force to the other Counts of plaintiffs' amended complaint.

Title VII upon governmental entities, constituted clear evidence that Congress intended to permit retrospective relief despite the Eleventh Amendment. 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1975).

The *Fitzpatrick* decision teaches that a congressional statute authorizes monetary damages against a state only where (1) it is enacted pursuant to the Fourteenth Amendment, and (2) Congress, in exercising its authority to enforce the Amendment, has specifically authorized such suits. *See, Gourdine v. Ellis*, 435 F.Supp. 882, 885 (D.S.C.1977). The Rehabilitation Act of 1973, unlike Title VII, does not contain the requisite explicit congressional authorization to enable individuals to bring suits against the states. The Eleventh Amendment is a bar, therefore, to plaintiffs' cause of action under 29 U.S.C. § 794 against the Commonwealth defendants. The motions of the remaining defendants must, of course, be denied.

### D. Primary Jurisdiction

Notwithstanding our holding that this court has jurisdiction over plaintiffs' claims against certain defendants under the Fourteenth Amendment, § 1983, and 29 U.S.C. § 794, we deem it appropriate to consider the doctrine of primary jurisdiction as a possible bar to consideration of plaintiffs' claims by this court. We may raise the question on our own motion. *Nader v. Allegheny Airlines, Inc.*, 167 U.S.App.D.C. 350, 365, 512 F.2d 527, 542 (1975), rev'd *on other grounds*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976); *Louisiana & Arkansas Ry. Co. v. Export Drum Co.*, 359 F.2d 311, 314 (5th Cir. 1966).

The Court of Appeals in this Circuit has explicated the doctrine in *MCI Communica-*

*tions Corp. v. American Telephone & Tel. Co.*, 496 F.2d 214, 220 (3d Cir. 1974):

> The doctrine of primary jurisdiction has been developed by courts in order to avoid conflict between the courts and an administrative agency arising from either the court's lack of expertise with the subject matter of the agency's regulation or from contradictory rulings by the agency and the court. Under the doctrine, a court should refer a matter to an administrative agency for resolution, *even if the matter is otherwise properly before the court*, if it appears that the matter involves technical or policy considerations which are beyond the court's ordinary competence and within the agency's particular field of expertise. (emphasis added).

*Drennon v. Philadelphia General Hospital*, 428 F.Supp. 809 (E.D.Pa.1977) is controlling of the case at bar. In *Drennon*, a person suffering from epilepsy instituted an action against a hospital and others, alleging an unconstitutional denial of employment solely by reason of epilepsy. The district court held that the plaintiff had stated a cause of action under the Fourteenth Amendment, § 1983, and 29 U.S.C. § 793[12] and § 794; however, the court invoked the doctrine of primary jurisdiction, and stayed the action pending consideration of the claims by an appropriate administrative agency. 428 F.Supp. 809, 817.

The procedural aspects of the instant case present an even stronger basis for application of the doctrine. *Drennon* was decided prior to promulgation of the administrative remedies of 29 U.S.C. § 794.[13] Since that decision, the Depart-

---

**12.** 29 U.S.C. § 793(b) provides:

> If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such

contract and the laws and regulations applicable thereto.

**13.** In *Drennon*, plaintiff's action was instituted pursuant to 29 U.S.C. § 793 and § 794. Regulations had been promulgated under § 793 and, since there were common issues which permeated plaintiff's claims under both sections of the Rehabilitation Act, the district court concluded that invocation of the doctrine of pri-

ment of Health, Education, and Welfare (HEW) has promulgated extensive regulations designed to effectuate the Rehabilitation Act of 1973. 45 C.F.R. § 84.1, et seq.

In issuing these regulations, HEW has engrafted the enforcement provisions applicable to Title VI of the Civil Rights Act of 1964. 45 C.F.R. § 84.61. These provisions provide that any person claiming discrimination may file a complaint with HEW. 45 C.F.R. § 80.7. An investigation and hearing is conducted. The complainant is not a party to the proceedings but can petition to appear as amicus curiae. 45 C.F.R. § 81.23. Thus, in our judgment, by requiring initial referral to HEW, this court is preserving the administrative machinery created to effectuate the Rehabilitation Act. Enforcement of the Act is enhanced in that relief may encompass institutions rather than individuals. And, to the extent the administrative agency resolves the issues, the district court's resources are conserved.

The necessity of administrative consideration of plaintiffs' claims appears particularly appropriate in this case. As the motions to dismiss, supporting briefs, and arguments of the defendants reflect, the crux of this dispute concerns the nature and scope of the duties which apply to Terrance Stubbs. For example, the Home for Crippled Children argues that, under applicable law and regulations, the duty to provide Terrance with a residential facility does not arise until the requirements of the Secretary of Education are fulfilled.[14] AIU asserts that once the parents of an exceptional child agree to private school placement, like the Home for Crippled Children, its responsibility ceases for placement of a child in a private facility.[15] Finally, the Commonwealth urges that the School District and the AIU are responsible for providing a handicapped child, such as Terrance Stubbs, with a free, appropriate program of special education and with due process protections.

Accordingly, we hold that, pursuant to the doctrine of primary jurisdiction, the present action will be stayed and plaintiffs' claims are remanded to the Department of Health, Education, and Welfare for consideration without regard to the 180 day limitation appearing at 45 C.F.R. § 80.7(b).

mary jurisdiction was still appropriate. *Drennon v. Philadelphia General Hospital, supra* at 818.

14. See ¶ 4 of their motion to dismiss.

15. See ¶ 4 of their motion to dismiss.