Alvin **NODLEMAN**, Matty **Nodleman**, and Nathan **Stockhammer**, Plaintiffs,

v.

**AERO MEXICO**, a corporation; Anthony **Garcia**, Station Manager for Aero Mexico; Manuel **Vasquez** d/b/a Reforma Mex; and the City of Los Angeles, Defendants.

No. CV 79–3909–WMB.

United States District Court,
C. D. California.

Dec. 10, 1981.

Barry A. Fisher, Marilyn Holle, Los Angeles, Cal., for plaintiffs.

Emily Stevens, Deputy City Atty., Los Angeles, Cal., for defendants.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S CITY OF LOS ANGELES MOTION TO DISMISS

WM. MATTHEW BYRNE, Jr., District Judge.

This action arises out of the refusal by a foreign airline to carry handicapped persons

from Los Angeles International Airport ("LAX") to Mexico. Plaintiffs Alvin Nodleman, Matty Nodleman and Nathan Stockhammer allege five causes of action: first, that the airline, defendant Aero Mexico, a Mexican corporation, has deprived plaintiffs of rights guaranteed them by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("the Act"), and Section 404(b) of the Federal Aviation Act, 49 U.S.C. § 1374(b); second, that defendants City of Los Angeles ("City"), which owns and operates LAX, and the Board of Airport Commissioners for the City ("Board") have violated plaintiffs' rights under Section 504, as well as under 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution; third, that Aero Mexico and Anthony Garcia, station manager of Aero Mexico, deprived plaintiffs of rights guaranteed them under Cal. Civ.Code § 54.1; fourth, that Garcia intentionally and maliciously conducted himself in an "outrageous manner," causing plaintiffs emotional distress, and that such conduct was ratified by Aero Mexico; and fifth, that Aero Mexico and Reforma Mex, an incorporated travel agency located in Los Angeles, breached their respective contracts with plaintiffs.[1]

Plaintiffs seek a declaration that defendants have violated their rights as alleged in the first, second, and third causes of action; injunctive relief requiring defendants to adopt internal policies and procedures and to provide for the availability of personnel and equipment, in order to ensure that the services and facilities provided by defendants will be made available to plaintiffs to the same extent as to members of the public generally; and for compensatory and punitive damages, costs, and attorney fees.

Defendant City moves to dismiss this action as to it, under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, on a variety of jurisdictional and substantive grounds.[2]

## I

In considering a motion to dismiss, the Court must assume the truth of the facts as set forth in the complaint. *See Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 834 (9th Cir. 1980); *Dodd v. Spokane County, Washington*, 393 F.2d 330, 334 (9th Cir. 1968). The allegations of the complaint must be viewed in the light most favorable to the pleaders and the complaint will not be dismissed unless it appears that no facts have been alleged that would entitle plaintiffs to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 21 L.Ed.2d 80 (1957); *see Hahn*, 615 F.2d at 834; *AMFAC Mortgage Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978).

The original and amended complaints aver that Matty Nodleman read an advertisement for a package vacation in La Paz, Mexico, which included air travel between LAX and La Paz, provided by Aero Mexico. She called the phone number listed in the

---

1. On November 1, 1979, plaintiffs filed a First Amended Complaint. Subject matter jurisdiction is founded on 28 U.S.C. §§ 1331 (federal question); 1343(3)–(4) (civil rights); and pendent jurisdiction, *see United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Plaintiffs allege that the Board is charged under the Los Angeles City Charter with the management and control of the Los Angeles Department of Airports, which, in turn, controls LAX. On March 25, 1980, a stipulation of dismissal with prejudice as to the Board was entered.

2. Although the City moves to dismiss all five causes of action, the plaintiffs state that only the second cause of action, alleging claims under Section 504 of the Rehabilitation Act of

1973, 29 U.S.C. § 794 ("Act"), the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. § 1983, is alleged against the City. A reading of the complaint supports plaintiffs' contention. In their prayer for relief, however, plaintiffs seek a declaration that "defendants," without further specification, violated plaintiffs' rights under various statutes, including some not implicated in the second cause of action as alleged. This Court shall read "defendants" in a manner consistent with the causes of action as alleged against particular defendants, *i.e.*, plaintiffs seek declaratory relief against the City only with respect to Section 504, the Fourteenth Amendment, and § 1983. *See* Fed.R.Civ.P. 8(f) ("all pleadings shall be construed as to do substantial justice").

advertisement, which was that of either Aero Mexico or its agent, Reforma Mex, and made reservations for herself, her husband Alvin, and Nathan Stockhammer, for such a package vacation. Mrs. Nodleman paid for and was issued three round-trip tickets for Aero Mexico flights between LAX and La Paz.

Alvin Nodleman is confined to a wheelchair. Stockhammer has multiple sclerosis and must use a wheelchair for extended trips. At the time she made the reservations, Mrs. Nodleman explained that her husband and Stockhammer would be traveling by wheelchair and was assured that they would be accommodated. On the day of their scheduled flight, plaintiffs checked in at the Aero Mexico Counter at LAX. The attendant informed them that they were not included on the flight list for the La Paz flight. When Mrs. Nodleman insisted that her reservation had been confirmed, she was told by the attendant that Aero Mexico would not take passengers in wheelchairs. She explained that the only assistance needed would be in helping her companions on and off the airplane. Later, defendant Garcia told Mrs. Nodleman that it was the airline's policy not to carry wheelchair users because the airline was unable to get them on and off the airplanes. After several hours of effort, plaintiffs were unsuccessful in obtaining boarding passes for La Paz or immediate refunds from Aero Mexico.

Plaintiffs allege that it is a standard practice of airlines to provide assistance to enplane and deplane wheelchair passengers and that Aero Mexico, on a previous occasion, had provided such assistance to a handicapped passenger on a comparable flight to La Paz. Plaintiffs do not allege that they sought any assistance from LAX personnel.

II

Section 504 of the Act, as amended, provides in pertinent part:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or the United States Postal Service.

28 U.S.C. § 794 (1979).

■ The Ninth Circuit has held that there is a private right of action under Section 504. *Kling v. County of Los Angeles*, 633 F.2d 876, 878 (9th Cir. 1980); *see Larry P. v. Riles*, 495 F.Supp. 926 (N.D.Cal. 1979); *Boxall v. Sequoia Unified School District*, 464 F.Supp. 1104 (N.D.Cal.1979); *see also Upshur v. Love*, 474 F.Supp. 332 (N.D.Cal.1979).[3] However, only plaintiffs who are "of the class for whose especial

**3.** Courts in other Circuits that have considered this issue have held that there is a right of action. *See Camenisch v. University of Texas*, 616 F.2d 127 (5th Cir. 1980), *vacated and remanded on other grounds*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *NAACP v. Medical Center, Inc.*, 599 F.2d 1247 (3d Cir. 1979); *Stubbs v. Kline*, 463 F.Supp. 110 (W.D. Pa.1978); *Davis v. Bucher*, 451 F.Supp. 791 (E.D.Pa.1978); *Drennon v. Philadelphia General Hosp.*, 428 F.Supp. 809 (E.D.Pa.1977); *Davis v. Southeastern Community College*, 574 F.2d 1158 (4th Cir. 1978), *rev'd on other grounds*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *Barnes v. Converse College*, 436 F.Supp. 635 (D.S.C.1977); *Hairston v. Drosick*, 423 F.Supp. 180 (S.D.W.Va.1976); *Leary v. Crapsey*, 566 F.2d 863 (2d Cir. 1977); *United Handicapped Federation v. Andre*, 558 F.2d 413 (8th Cir. 1977); *Lloyd v. Regional Transporta-*

*tion Authority*, 548 F.2d 1277 (7th Cir. 1977); *Cruz v. Collazo*, 84 F.R.D. 307 (D.P.R.1979); *Michigan Paralyzed Veterans of America v. Coleman*, 451 F.Supp. 7 (E.D.Mich.1977); *see also Kampmeier v. Nyquist*, 553 F.2d 296 (2d Cir. 1977) (implied action under Section 504 probable).

In *Southeastern Community College v. Davis*, the Supreme Court expressly declined to decide the question. 442 U.S. at 404–5 n.5, 99 S.Ct. at 2366–67 n.5, 60 L.Ed.2d 980. The Court has suggested, however, that a private right of action exists. *See University of Texas v. Camenisch*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) (remanded to district court for determination on the merits); *Campbell v. Kruse*, 434 U.S. 808, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977) (district court directed on remand to decide case under Section 504).

benefit the statute was enacted" have standing to bring an action where a private remedy is implicit in a statute that does not expressly provide for one. *See Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975).

### A.

■ Clearly, handicapped individuals are of the especially benefited class of Section 504. *See Kling,* 633 F.2d at 878; *see e.g., Kampmeier v. Nyquist,* 553 F.2d 296, 299 (2d Cir. 1977) ("it [is] probable that the plaintiffs [handicapped individuals] do have standing to sue; they are the people in the best position to enforce § 504, which is designed specifically for their protection" [footnotes and citations omitted]); *cf. Wood v. Diamond State Telephone Co.,* 440 F.Supp. 1003, 1008 (D.Del.1977) (handicapped plaintiffs are of the especially benefitted class of the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 793, but no private action recognized thereunder). For purposes of this motion, the Court accepts as true the allegations of Alvin Nodleman and Stockhammer that they both must use wheelchairs and are "handicapped individual[s]" within the meaning of 29 U.S.C. § 706(7)(B),[4] (8). Thus, they are of the "class for whose especial benefit" Section 504 was enacted, and have standing to bring a private action thereunder.[5]

Under traditional standing analysis, Alvin Nodleman and Stockhammer have met the judicially imposed limitation that the alleged injuries were to an interest "arguably within the zone of interests to be protected or regulated by the statute that it is claimed defendants have violated." *Sierra Club v. Morton,* 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972); *Associa-*

tion of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *see generally* L. Tribe, *American Constitutional Law* § 3–22, at 98 n.6 (1978) (standing doctrine linked with analysis federal courts apply in implying causes of action).[6] It is apparent that the injuries alleged by Alvin Nodleman and Stockhammer are within the "zone of interests" that Section 504 expressly was intended to protect, namely, ensuring that handicapped individuals do not experience discrimination by recipients of federal financial assistance in the provision of services and facilities related to such assistance.

■ Where a statute entitles plaintiffs to bring a private cause of action, such plaintiffs must still meet the standing requirements of Article III of the Constitution. *See Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). Article III requires that the plaintiff have a "personal stake in the outcome of the controversy to insure concrete adverseness," *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978), and a "distinct and palpable injury to himself," *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), that is likely to be redressed if the requested relief is granted, *Simon,* 426 U.S. at 38, 96 S.Ct. at 1924, 48 L.Ed.2d 450. The grounds that establish standing will not be presumed. Plaintiffs must proffer specific facts that establish their actual or threatened "injury in fact." *Id.,* 426 U.S. at 38–39, 44, 96 S.Ct. at 1924–

---

**4.** Section 504 applies to "qualified handicapped individual[s]" as defined in 29 U.S.C. § 706(7), which states, in pertinent part:

 (B) [t]he term "handicapped individual" means, for purposes of subchapters IV and V of this chapter, any person who (i) has a physical or mental impairment which substantially limits one or more of the person's major activities, (ii) has a record of such an impairment or (iii) is regarded as having such an impairment.

**5.** Defendant City does not deny that Alvin Nodleman and Stockhammer are within the applicable definition of "handicapped individual" and have standing to sue under Section 504.

**6.** For a detailed discussion of the "Zone of Interest" analysis, *see Tax Analysts & Advocates v. Blumenthal,* 566 F.2d 130 (D.C.Cir. 1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

25, 1927, 48 L.Ed.2d 450 (1976); *Fisher v. Tucson School District No. One*, 625 F.2d 834, 837 (9th Cir. 1980).

■ Plaintiffs Alvin Nodleman and Stockhammer have alleged "injuries in fact," insofar as they have alleged that they were denied use of services and facilities provided by recipients of federal financial assistance, solely on the basis of their handicaps. These injuries would likely be redressed if the requested injunctive relief is granted. Therefore, Alvin Nodleman and Stockhammer have met the requirements of Article III, and have standing to sue under Section 504 in this action.

### B.

Matty Nodleman, however, has not alleged that she is a "handicapped individual" within the meaning of § 706(7). Nor has she alleged any facts from which she could reasonably be "regarded" as having a physical or mental impairment within the meaning of § 706(7)(B), which would qualify her as a "handicapped individual" under Section 504.[7] Consequently, she has not alleged that she has been denied the services and facilities of Aero Mexico and City solely on the basis of *her* handicap. Thus, unless nonhandicapped persons are entitled to sue under Section 504, Matty Nodleman cannot establish that she has standing to sue thereunder.

■■ The question of whether a plaintiff is of the "especially benefited class" entitled to an implied statutory cause of action is one of statutory construction. *See Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 687, 690, 99 S.Ct. 1946, 1953, 1954, 60 L.Ed.2d 560 (1979). As in any case involving the interpretation of a statute, the analysis must begin with the language of the

statute itself. *Id. Northwest Airlines Inc. v. Transport Workers Union*, 451 U.S. 77, 88, 101 S.Ct. 1571, 1579, 67 L.Ed.2d 750 (1981); *Osborn v. American Association of Retired Workers*, 660 F.2d 740, 742 (9th Cir. Nov. 6, 1981).

■ It does not appear from the language of Section 504 that nonhandicapped individuals are within the "especially benefited class" entitled to sue thereunder. However, the issue of standing to bring a private cause of action requires consideration of the legislative scheme, purpose and history of the act, as well as the regulations promulgated thereunder, and analogous statutory schemes and cases. *See Gladstone Realtors*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66; *Trafficante v. Metropolitan Life Insurance Company*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); *Waters v. Heublein, Inc.*, 547 F.2d 466 (9th Cir. 1976), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977); *see generally Northwest Airlines Inc.*, 451 U.S. at 89, 101 S.Ct. at 1579, 67 L.Ed.2d 750; *Osborn*, at 742.

The legislative history provides no express guidance as to the scope of standing as to any administrative or judicial remedial procedures available under Section 504. However, the legislative history does indicate that the Act was patterned after Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. *See* S.Rep.No. 1297, 93d Cong.2d Sess. 18, *reprinted in* [1974] U.S.Code Cong. & Ad.News 6373, 6390. In 1978, Congress amended the Act to extend all rights, remedies, and procedures available under Title VI to Section 504:

> [t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act by any recipient of Federal financial assistance or Federal provider of such assistance under 794 of this title.

---

**7.** Plaintiffs' counsel represented on the record that Matty Nodleman is not a "handicapped

individual" within the meaning of Section 504.

29 U.S.C. § 794a(2) (Supp.1979); *see* H.R. Rep.No. 1188, 95 Cong. 1st Sess., *reprinted in* [1978] U.S.Code Cong. & Ad.News 7312, 7404.

Only one reported case has involved a private cause of action brought under Section 504 by a non-handicapped plaintiff. In *Stubbs v. Kline*, 463 F.Supp. 110 (W.D.Pa. 1978), a handicapped child and his mother brought an action under the Education of the Handicapped Act, 20 U.S.C. §§ 1401–1461, ("Education Act"), and Section 504. The court did not discuss the issue of the parent's standing under either act. The Education Act, however, explicitly provides a parent with certain procedural rights, *see* 20 U.S.C. § 1415, whereas no procedural rights are explicitly provided spouses or friends of handicapped individuals under Section 504. Moreover, the legislative history of the Education Act indicates that Congress intended to provide parents, as well as their children, with certain benefits. *See* S.Rep.No.168, 94th Cong., 2d Sess. 5–8 (1975), U.S.Code Cong. & Admin.News 1975, p. 1425; *see also Cruz v. Collazo*, 84 F.R.D. 307, 310–11 n.2 (D.P.R.1979). In contrast, there is nothing in the legislative history of the Handicapped Act that expressly indicates that such third parties as spouses or friends of handicapped individuals were intended to have a private action for illegal discrimination thereunder. Thus, in *Stubbs*, it is unclear whether the court concluded that the parent had standing to sue under Section 504 because she was deemed to be within the "especially benefited class"

of the Act, or whether the parent merely had standing as a representative of the child-plaintiff.

Therefore, this Court must look to the standing enforcement procedures by Title VI, 42 U.S.C. § 2000d to 2000d–6, referred to in Section 505(a)(2), and Title IX, 20 U.S.C. § 1681 et seq., after which Section 504 was patterned. *See Kling*, 633 F.2d at 878 n.3; S.Rep. 1297, 93d Cong.2d Sess. 18, *reprinted in* [1974] U.S.Code Cong. & Ad. News 6373, 6390. The Supreme Court has held that Title VI creates a private right of action. *Lau v. Nichols*, 414 U.S. 563, 566, 94 S.Ct. 786, 788, 39 L.Ed.2d 1 (1974). Indeed, the Court in *Kling*, relied in part on the analogy to Title VI in holding that Section 504 creates a private right of action. 633 F.2d at 878. Similarly, the Supreme Court has ruled that Title IX creates a private right of action. *Cannon*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560.

Apparently, no reported case has addressed expressly the issue of whether Title IX confers standing upon persons other than those who were the target of the alleged discrimination that the statute was intended to prohibit.[8] Only one reported case has impliedly held that Title VI confers standing upon such persons. *Evans v. Lynn*, 376 F.Supp. 327 (S.D.N.Y.1974), *rev'd on other grounds*, 537 F.2d 571 (2d Cir. 1975), *aff'd on rehearing en banc*, 537 F.2d 589 (2d Cir. 1976), *cert. denied*, 429 U.S. 1066, 97 S.Ct. 797, 50 L.Ed.2d 784 (1977).[9] In *Evans*, the district court cited *Traffi-*

---

**8.** *But cf. National Collegiate Athletic Ass'n v. Califano*, 622 F.2d 1382 (10th Cir. 1980). In *National Collegiate*, the Court held that the plaintiff association had standing to sue under Title IX on behalf of its members, who would have standing individually. The Court broadly construed the language "adversely affected" or "aggrieved" under the Administrative Procedure Act, 5 U.S.C. § 702, Section 10a, with respect to a claim under Title IX. The Court concluded that because the legislative history did not show that the association's members were clearly not within the "zone of interests," such individuals need only show a "sensible relation between some subject of the statute" and their "interest in the outcome of the litigation." *Id.* at 1386–87.

**9.** In *Concerned Tenants Ass'n v. Indian Trails Apartments*, the District Court held that plaintiff tenants had a private cause of action under Title VI for injunctive relief but not for monetary damages. 496 F.Supp. 522 (N.D.Ill.1980). In *Concerned Tenants*, the defendant-landlords allegedly allowed the conditions of the plaintiffs' apartment residence to deteriorate after black tenants moved in. It is unclear from the opinion whether any of the plaintiffs were white. Arguably, the discriminatory conduct was directed at the black tenants, but both black and white tenants may have suffered "injury in fact" as a result.

*cante,*[10] for the proposition that the Civil Rights Acts, including both Title VI (the Civil Rights Act of 1964) and Title VIII (the Civil Rights Act of 1968), "evince a congressional intention to define standing as broadly as permitted by Article III of the Constitution." *Evans,* 376 F.Supp. at 331.[11]

The Supreme Court in *Trafficante,* in fact, only considered standing under the Civil Rights Act of 1968, §§ 801–819, 42 U.S.C. §§ 3601–3619. In *Trafficante,* white plaintiffs brought suit for lost social benefits of living in an integrated neighborhood caused by a landlord's alleged discrimination against nonwhites. The Court concluded that the definition in § 810(a), 42 U.S.C. § 3610(a) of "persons aggrieved," for purposes of standing to file an administrative claim under the act, as "any person who claims to have been injured by a discriminatory housing practice," showed a congressional intent to define standing as broadly as permitted by Article III. 409 U.S. at 209, 93 S.Ct. at 366–67, 34 L.Ed.2d 415. The Court then held that the white plaintiffs' allegations that they had lost associational interests due to discrimination against blacks met the Article III requirements of individual injury and injury in fact.

In *Topic v. Circle Realty,* 532 F.2d 1273 (9th Cir. 1976), the Ninth Circuit held that unlike § 810 of the Civil Rights Act of 1968, § 812, 42 U.S.C. § 3612, did not authorize lawsuits to vindicate the rights of persons other than those against whom the discrimination was directed. The Ninth Circuit emphasized that whereas § 810 permitted suits

"by any person who claims to have been injured by a discriminatory housing practice," § 812 simply provides that "[t]he rights granted by [section 3604, *inter*'*alia* ] may be enforced by civil actions." *Id.* at 1275.

In *Gladstone Realtors,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66, however, the Supreme Court rejected the Ninth Circuit's conclusion, which it found "inconsistent with [Title VIII's] terms and its legislative history." *Id.* at 1609. The Court found that "[n]othing in the language of § 812 suggests that it contemplates a more restricted class of plaintiffs than does § 810." The Court stated that "[t]he absence of 'person aggrieved' in § 812 . . . does not indicate that standing is more limited under that provision than under § 810." *Id.* at 1609.

Courts have applied the rationale of *Trafficante* to other civil rights statutes. *See Tillman v. Wheaton-Haven Recreation Association, Inc.,* 410 U.S. 431, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973); *Waters,* 547 F.2d 466. In *Tillman,* the Supreme Court implicitly ruled that white members of a community pool association had standing under the Civil Rights Act of 1866, now 42 U.S.C. § 1982, the Civil Rights Act of 1870, now 42 U.S.C. § 1981, and Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a to 2000a–6, to assert claims based on the association's refusal to admit a black guest. These acts confer rights to "[a]ll citizens," (§§ 1981 & 1982), or "all persons," (§ 2000a to 2000a–6).[12]

10. 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415.

11. The district court, in *Evans,* however, determined that the plaintiffs, low-income minority residents, had failed to meet the constitutional standing requirement of "injury in fact" and therefore dismissed their complaint. 376 F.Supp. at 331–334. On appeal, the Second Circuit agreed with the district court that the plaintiffs were "arguably within the zone of interests protected by Titles VI and VIII." 537 F.2d at 577. The Court reversed the order of the district court, however, on the ground that the plaintiffs had adequately pleaded "injury in fact."

On rehearing *en banc,* the Second Circuit affirmed the order of the district court granting

dismissal on the grounds that the constitutional requirement of "injury-in-fact" had not been met by the plaintiffs. The *en banc* panel did not address the issue of whether such plaintiffs would have standing under Titles VI and VIII if they could establish "injury in fact." 537 F.2d at 589. Judge Mansfield, in his concurrence stated, however, that no "authority to sue is to be found in these statutes." 537 F.2d at 598. Thus, after *Evans,* the issue of standing under Titles VI and VIII appears unsettled in the Second Circuit.

12. *See National Organization for Women v. Sperry Rand Corp.,* 457 F.Supp. 1338 (D.Conn. 1978) (white can bring suit under § 1981 for loss of associational benefits due to employ-

In *Waters*, the Ninth Circuit held that a white female had standing to sue under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e–5(b) & (f)(1), to enjoin discriminatory employment practices directed at blacks and hispanics, as well as women. In concluding that the plaintiff was a "person aggrieved," by the alleged racial discrimination, the Court found the case "logically indistinguishable from *Trafficante*," where the Supreme Court had recognized standing under Title VIII to assert the loss of interracial associational benefits. 547 F.2d at 469–470. *Accord, EEOC v. Bailey Co., Inc.*, 563 F.2d 439, 452 (6th Cir. 1977); *Gray v. Greyhound Lines, East*, 545 F.2d 169, 176 (D.C.Cir.1976); *National Organization for Women v. Sperry Rand Corp.*, 457 F.Supp. 1338, 1345 (D.Conn.1978).

 Section 504 does not appear to confer substantive rights upon non-handicapped individuals. However, that plaintiffs "themselves are not granted substantive rights" by Section 504 "hardly determines whether they may sue to enforce the [Section 504] rights of others." *Gladstone*

ment discrimination aimed at blacks); *Walker v. Pointer*, 304 F.Supp. 56 (N.D.Tex.1969) (white tenants allegedly evicted because of black guests had standing under § 1982 irrespective of harm to blacks); *cf. Winston v. Lear-Siegler, Inc.*, 558 F.2d 1266 (6th Cir. 1977) (white plaintiff had standing to sue former employer under § 1981 for discharging him in alleged retaliation for protesting alleged discriminatory termination of black co-worker); *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306 (2d Cir.), *modified*, 520 F.2d 409 (2 Cir. 1975) (white plaintiffs had standing under § 1981 to sue employer for relief from measures taken against them in retaliation for having sold property to a black); *but see Topic*, 532 F.2d 1273 (§ 1982 does not confer standing to anyone other than a person who was the victim of racial discrimination); *Trafficante*, 446 F.2d 1158 (9th Cir. 1971), *rev'd on other grounds*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); *Ripp v. Dobbs Houses, Inc.*, 366 F.Supp. 205 (N.D.Ala.1973) (white plaintiff cannot rely on § 1981 to present claims with respect to private employment); *but see also Stroud v. Delta Air Lines, Inc.*, 544 F.2d 892 (5th Cir.), *cert. denied*, 434 U.S. 844, 98 S.Ct. 146, 54 L.Ed.2d 110 (1977) (dictum) (female plaintiff could not assert the rights of prospective male flight attendants who would complain of illegal hiring policy based on sex).

*Realtors*, 441 U.S. at 103, 99 S.Ct. at 1610 n.9, 60 L.Ed.2d 66 (discussing § 812 of the Civil Rights Act of 1968). The central issue at this stage of the proceedings is not who possesses the legal rights protected by Section 504, but (1) whether Congress intended standing under Section 504 to extend to the full limits of Article III, and (2) if so, whether plaintiff was "genuinely injured by conduct that violates *someone's* [Section 504] rights, and thus are entitled to seek redress of that harm under [Section 504]." *Id.* (discussing § 812).

 The strong similarities in language, design, and purpose of Sections 504 and 505 and other civil rights statutes require that the phrase "any person aggrieved" be construed in the same manner as the Supreme Court construed the terms in *Trafficante*. The use of the phrase "any person aggrieved" in Section 505(a)(2) evinces a congressional intention to define standing to bring a private action under Section 504 as broadly as is permitted by Article III of the Constitution.[13]

13. Further support for this position is found in the regulations promulgated to implement Section 504. The D.O.T. regulation confers standing upon "[a]ny person who believes himself/herself or any specific class of individuals *to be harmed* by failure to comply with this part," to file a complaint with the department. [emphasis supplied]. 49 C.F.R. § 27.123(b) (1980); *see* 45 C.F.R. §§ 80.6–80.10, 84.61 (1980) (procedural provisions applicable to Title VI of the Civil Rights Act of 1964 adopted to apply to Section 504, confer standing to file a complaint with Department of Health and Human Services ("HHS") upon "[a]ny person who believes himself or any specific class of individuals *to be subjected to* discrimination prohibited by this part").

*Cf. National Collegiate Athletic Ass'n*, 622 F.2d at 1386–87:

Unless the legislative history shows the plaintiff to be clearly *not* within the "zone of interests," a court should demand no more than a sensible relation between some object of the statute and plaintiff's interest in the outcome of the litigation.

*citing Tax Analysts & Advocates v. Blumenthal*, 566 F.2d 130, 142, 143 n.80 (D.C.Cir.1977), cert. denied, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *see* note 8 *supra*.

In two recent cases involving employment discrimination claims under Section 504, the courts have read Section 505(a)(2), which ex-

■ Congress may expand standing to the full extent permitted by Article III, thus permitting litigation by one "who otherwise would be barred by the prudential standing rules." *Gladstone*, 441 U.S. at 100, 99 S.Ct. at 1608, 60 L.Ed.2d 66; *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206, 45 L.Ed.2d 343. "In no event, however, may Congress abrogate the Article III minima: A plaintiff must always have suffered 'a distinct and palpable injury to himself', [*Warth*, 422 U.S. at 501, 95 S.Ct. at 2206, 45 L.Ed.2d 343], that is likely to be redressed if the requested relief is granted. [*Simon*, 426 U.S. at 38, 96 S.Ct. at 1924]." *Gladstone*, 441 U.S. at 100, 99 S.Ct. at 1608, 60 L.Ed.2d 66.

■ The Supreme Court has recognized that a person may sue to enforce the rights of others under Civil Rights statutes that confer standing to the full extent permitted by Article III, where: (1) "it would be difficult if not impossible for the persons whose rights are asserted to present their grievance before any court," *Barrows v. Jackson*, 346 U.S. 249, 257, 73 S.Ct. 1031, 1035, 97 L.Ed. 1586 (1953),[14] or (2) where plaintiff alleges the loss of important associational benefits resulting from the exclusion of discriminatees, *Trafficante*, 409 U.S. at 210–11, 93 S.Ct. at 367, 34 L.Ed.2d 415.

■ It is unclear from the complaint on which these two bases Matty Nodleman is asserting standing to sue under Section 504. Where a plaintiff is asserting the rights of others, the alleged injury may be "so attenuated as to negate the existence of any injury in fact." *Topic*, 532 F.2d at 1275. The grounds that establish standing will not be presumed. *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206, 45 L.Ed.2d 343; *Fisher*, 625 F.2d at 837. Because Matty Nodleman has failed to allege specific facts sufficient to clarify the basis on which she asserts standing under Section 504, her claims brought under that section are dismissed without prejudice. *See Warth*, 422 U.S. 501–502, 95 S.Ct. 2206–7, 45 L.Ed.2d 343 ("it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint ... further particularized allegations of fact deemed supportive of plaintiff's standing").[15]

tended the application of Title VI remedies, rights and procedures under the Civil Rights Act of 1964, as limiting the congressional extension of procedural protection afforded individuals aggrieved under Section 504. *See Trageser v. Libbie Rehabilitation Center, Inc.*, 590 F.2d 87 (4th Cir. 1978), *cert. denied*, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979) (limitation under Section 604 of Title VI, prohibiting federal agency action against employer, except where primary objective of federal assistance is to provide employment, incorporated by Section 505(a)(2) of the Act, and applies to private employment discrimination actions thereunder); *see also Carmi v. Metropolitan St. Louis Sewer District*, 620 F.2d 672 (8th Cir.), *cert. denied*, 449 U.S. 892, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980) (court suggested that Section 604 of Title VI is incorporated by Section 505(a)(2) of the Act and prohibits employment discrimination actions by persons who are not the intended beneficiary of federal employment program assistance); *but see Carmi*, 620 F.2d at 676 (McMillian, J., concurring) (incorporation of Section 604 and application to private actions questioned).

Even assuming that Section 604 of Title VI was incorporated by Section 505(a)(2) of the Act and applies to private actions, there is no indication that the limitation imposed thereunder applies to actions other than those for employment discrimination. In any event, this Court rejects any implication from *Trageser* and *Carmi* that would result in a narrower reading of standing to sue under Section 504, in the context of a non-employment discrimination action, than is held herein.

14. *See Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (white plaintiff may have standing to vindicate rights of minorities protected by § 1982). In the present case, an assertion by plaintiff Matty Nodleman of standing under Section 504 based on the difficulty or impossibility of handicapped individuals presenting their grievances is undercut by the presence of handicapped individuals, Alvin Nodleman and Stockhammer, as named plaintiffs.

15. Although defendant Aero Mexico did not join in the motion to dismiss, jurisdiction of the court under Article III is always open to inquiry upon the court's own motion. *See, e. g., Pacific Towboat & Salvage Co. v. I.C.C.*, 620 F.2d 727 (9th Cir. 1980). The discussion concerning standing is applicable to plaintiffs' Section 504 claims against Aero Mexico, as well as those against the City. Therefore, Matty Nodleman's claims under Section 504 are dismissed without prejudice as to both defendants.

### III

Defendant City argues that the doctrines of exhaustion of administrative remedies and primary jurisdiction bar consideration of plaintiffs'[16] Section 504 claims by this Court at this time.[17]

Plaintiffs allege that the City has violated Section 504 by its failure to ensure that wheelchair users are not denied the services and facilities of LAX and of airlines operating out of LAX solely on the basis of their handicap. There is no dispute that the City is a recipient of federal financial assistance in its capacity as owner and operator of LAX.[18] However, there is no allegation in the amended complaint that plaintiffs were denied any service or facility of LAX. Rather, plaintiffs assert that the City had a duty under Section 504 to ensure that Aero Mexico not deny them flight service out of LAX solely on the basis of their handicap.

■ Federal agencies empowered to extend federal assistance are required to issue rules, regulations, or orders of general applicability to implement the legislative mandate expressed in the Act. *See* 29 U.S.C. § 794; Executive Order 11914, 41 Fed.Reg. 17871 (April 28, 1976) (29 U.S.C. § 794, Note (1978)); *cf.* 42 U.S.C. § 2000d–1.[19]

The regulations promulgated by the Department of Transportation ("DOT") to implement Section 504 include requirements relating to boarding devices, ticket counters, baggage check-in and retrieval, and typewriters, but do not expressly impose a duty upon airport operators to ensure that airlines carry handicapped persons. *See* 49 C.F.R. Part 27 (1980). The DOT declined to impose such a duty because the Civil Aeronautics Board ("CAB") had determined that it had statutory authority to issue regulations governing air transportation of handicapped persons. *See* 44 Fed.Reg. at 31450–51; 49 C.F.R. Part 27 (1980). The DOT also did not promulgate regulations pertaining to the accessibility of aircraft interiors because it determined that subject "was more appropriately dealt with by the forthcoming rules of the [CAB]." *Id.*[20] Thus, the DOT

---

**16.** In view of the dismissal of Matty Nodleman's claims under Section 504, "plaintiffs," in Sections III, IV and V, refers only to Alvin Nodleman and Stockhammer.

**17.** *Defendant City, in its moving papers, has* referred to the doctrine of primary jurisdiction as a subspecies of the exhaustion doctrine. Although the doctrines of primary jurisdiction and exhaustion of administrative remedies serve cognate ends, they are distinguishable:

"Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*United States v. Western Pacific R.R.*, 352 U.S. 59, 63-64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956), *quoted in Writers Guild of America v. American Broadcasting Co., Inc.*, 609 F.2d 355, 363 (9th Cir. 1979), *cert. denied*, 449 U.S. 824, 101 S.Ct. 85, 66 L.Ed.2d 27 (1980).

**18.** Plaintiffs allege that the City has received federal financial assistance with respect to the construction of facilities at LAX. Neither plaintiffs nor defendants specify which federal agency is the grantor of such funds, the nature of the assistance, *i. e.*, whether the assistance was in the form of grants or loans, or the amount of such assistance.

**19.** Executive Order 11914 directed the Secretary of Health, Education and Welfare ("HEW") to establish standards, guidelines, and procedures for federal agency implementation of Section 504. The Order also directed other federal agencies, including the DOT and the Civil Aeronautics Board ("CAB") to issue rules consistent with the HEW standards and procedures. HEW issued its standards, guidelines and procedures on January 13, 1976 (43 Fed.Reg. 2132). On June 8, 1978, the DOT issues a "Notice of Proposed Rulemaking" to implement Section 504 (43 Fed.Reg. 25016). On May 31, 1979, the DOT promulgated *its* final rules and procedures (44 Fed.Reg. 31442). The CAB issued a "Notice of Proposed Rulemaking" to implement Section 504 on June 6, 1979 (44 Fed.Reg. 32401–7). The final CAB *rules and procedures have not yet been promul-*gated.

**20.** In the "Supplemental Information" to Part 27, the DOT stated:

Many comments from handicapped individuals or groups representing them asked that

regulations are not intended to regulate the air transportation of handicapped persons; nor do they impose upon the City a duty to ensure that Aero Mexico, as a carrier operating out of LAX, does not discriminate against wheelchair users in the provision of air transportation.

The CAB has proposed rules prohibiting "unlawful discrimination" against disabled travelers by air carriers and providing procedures for the filing of complaints with either the relevant carrier or the CAB. See "Notice of Proposed Rulemaking, Nondiscrimination on the Basis of Handicap," 44 Fed.Reg. 32401–07 (June 6, 1979). The proposed regulations apply only to "certified carriers and air taxi operators," and not expressly to airport operators. Id. Moreover, the CAB has not promulgated any final regulations to implement Section 504. ▮▮▮ Where there is no administrative remedy available, the doctrines of exhaustion and primary jurisdiction do not apply. See Lloyd v. Regional Transportation Authority, 548 F.2d 1277 (7th Cir. 1977) (no administrative remedy available for Section 504 claim); Whitaker v. Board of Higher Education of the City of New York, 461 F.Supp. 99 (E.D.N.Y.1978) (available procedures provided inadequate remedy for Section 504 claim); see also Rosado v. Wyman, 397 U.S. 397, 405–06, 90 S.Ct. 1207, 1214–15, 25 L.Ed.2d 442 (1970) (exhaustion and primary jurisdiction doctrines inapplicable because Department of Health, Education and Welfare had no procedures whereby welfare recipients could "trigger" and "participate" in department's review of state welfare programs). Because the

DOT's regulations do not govern air transportation of handicapped persons and the CAB has not promulgated its final regulations, there is no administrative remedy available to plaintiffs for their claim that the City has a duty to ensure that Aero Mexico does not discriminate against wheelchair users in providing air transportation. Therefore, the doctrines of exhaustion and primary jurisdiction are inapplicable to a Section 504 claim based on such a duty.

IV

Thus, the issue is whether the City has a duty under Section 504 to ensure that Aero Mexico does not discriminate against handicapped persons, notwithstanding that no existing regulations impose such a duty. Section 504 does not explicitly impose such a duty on airport operators that are recipients of federal financial assistance. Although existing regulations that implement Section 504 are not controlling, they do provide guidance in determining whether such a statutory duty exists.

The regulations demonstrate a federal policy to make certain that all recipients, other than ultimate beneficiaries, of federal financial assistance do not discriminate against handicapped persons in the provision of services related to such assistance. DOT regulation § 27.5, for example, provides:

> "Recipient" means any state or its political subdivision, any instrumentality of a state or its political subdivision, any public or private agency, institution, organization, or other entity, or any person to

the rule specifically require airlines to carry handicapped travelers, modify aircraft cabins for greater accessibility, and improve services to handicapped persons. The NPRM [Notice of Proposed Rulemaking] contained, and the final rule retains, requirements relating to boarding devices, ticket counters, baggage check-in and retrieval, and typewriters, all of which are owned by the airlines at most airports. Following publication of the NPRM, representatives of the DOT, FAA, HEW, and the . . . [CAB] met to discuss the respective legal authority and responsibilities for improving the accessibility of air travel to handicapped persons. Following this meet-

ing, the CAB determined that it had statutory authority to issue regulations governing air transportation of handicapped persons, both under section 504 . . . and under Sections 404 and 411 of the Federal Aviation Act. 44 Fed.Reg. 31442 at 31451 (May 31, 1979). In addition, the DOT deleted from its final regulations a proposed requirement that guide dogs be permitted on all certified aircraft and in terminals because the DOT concluded that "as a requirement pertaining to the accessibility of aircraft interiors, it was more appropriately dealt with by the forthcoming rules of the [CAB]." Id. at 31450–51.

which Federal financial assistance *is extended directly or through another recipient, but excluding the ultimate beneficiary* of the assistance. [emphasis supplied].

49 C.F.R. § 27.5; *see* 45 C.F.R. § 84.3(f) (1980) (Department of Health and Human Services' definition essentially the same).

█ Plaintiffs allege that Aero Mexico is an "indirect beneficiary of federal funds used in the construction of those facilities at LAX which it utilizes under its lease of airport space and facilities." Thus, both the City, as the direct recipient of federal financial assistance, and Aero Mexico, as an indirect beneficiary of such assistance, may be subject to Section 504 and the regulations promulgated thereunder.[21]

The DOT regulations impose a duty upon recipients of federal financial assistance to give assurances that will obligate them, as well as transferees of such assistance, not to discriminate against handicapped persons solely on the basis of their handicap. 49 C.F.R. § 27.9.[22] Pursuant to these "assurances," both the recipient-transferor and the transferee are bound by Section 504 and the regulations thereunder, so long as federal financial assistance is used for the same or similar purposes for which it was

granted. *See* 44 Fed.Reg. 31442, 31445 (Supplemental Information to 49 C.F.R. Part 27).

█ Thus, if plaintiffs establish that the City transferred federal financial assistance to Aero Mexico, both would be subject to Section 504 and the regulations. Neither the statute nor the regulations, however, impose a duty on the City to prevent Aero Mexico, either as an indirect beneficiary or transferee of federal assistance, from discriminating against handicapped persons in the provision of services related to such space and facilities. Therefore, plaintiffs have failed to state a claim upon which relief can be granted against the City under Section 504, based on such a duty.

## V

In their opposition papers, plaintiffs argue that the City violated Section 504 because it failed to ensure the provision of adequate assistance for enplaning handicapped persons at Aero Mexico's LAX terminal, as is required under DOT regulations. The DOT regulations provide that:

Each operator at an airport receiving any Federal financial assistance shall assure that adequate assistance is provided for enplaning and deplaning handicapped

**21.** The "ultimate beneficiary" of federal financial assistance within the meaning of Section 504, and the DOT and Health and Human Services regulations promulgated thereunder, is the intended class of beneficiaries under the Section, handicapped individuals. *See N.A.A.C.P. v. Wilmington Medical Center, Inc.,* 453 F.Supp. 330, 339 (D.Del.1978), *rev'd on other grounds,* 599 F.2d 1247 (3d Cir. 1979) ("ultimate beneficiary" under 45 C.F.R. § 80.13(i), 42 U.S.C. § 2000d, and Section 504 means "intended class of beneficiaries"). Defendant City contends that Aero Mexico is an "ultimate beneficiary" of federal financial assistance received by the City. However, Aero Mexico is not within the class of intended beneficiaries under Section 504, and, therefore, is not an "ultimate beneficiary."

**22.** Section 27.9 states in pertinent part:
(b) ... [r]ecipients of Federal financial assistance and transferees of property obtained by a recipient with the participation of Federal financial assistance, are bound by the recipient's assurance under the following circumstances:

(1) When Federal financial assistance is provided in the form of a conveyance of real property or an interest in real property from the [DOT] to a recipient, the instrument of conveyance shall include a covenant running with the land binding the recipient and subsequent transferees to comply with the requirements of this part for so long as the property is used for the purpose for which the Federal financial· assistance was provided or for a similar purpose.
[subsections (2)–(4) impose similar obligations upon the recipient-transferor and the transferee of property for which federal financial assistance was used to purchase or · improve; personal property provided to the recipient or obtained by the recipient with federal financial assistance; and federal financial assistance used by the recipient for purposes other than to obtain property].
49 C.F.R. § 27.9 (1980); *see* "Supplemental Information to 49 C.F.R. Part 27," 44 Fed.Reg. 31442, 31445.

persons. Boarding by jetways and by passenger lounges are the preferred methods for movement of handicapped persons between terminal buildings and aircraft at air carrier airports; however, where this is not practicable, operators at air carrier airport terminals shall assure that there are lifts, ramps, or other suitable devices not normally used for movement of freight that are available for enplaning and deplaning wheelchair users.

49 C.F.R. § 27.71(a)(2)(v); see also § 27.71(b)(4).[23]

The DOT regulations provide procedures for the filing of written complaints with the DOT by "[a]ny person who believes himself/herself or any specific class of individuals to be harmed by the failure to comply with [§ 27]." 49 C.F.R. § 27.123. These procedures do not assure either participa-

tion by individuals, beyond the original filing of the complaint, or individual relief. Moreover, individual complainants cannot assure themselves that the administrative process will reach a decision on their complaints within a reasonable time. Such procedures do not afford individual complainants adequate relief, and, therefore, exhaustion of Section 504 administrative remedies under § 27.123 is not required before plaintiffs file a private action. See Kling, 633 F.2d at 879 (exhaustion of HEW administrative remedies under Section 504 not required because procedures provide inadequate individual relief); cf. Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (exhaustion of Title IX of the Education Amendments of 1972, §§ 901–03, 20 U.S.C. §§ 1681–83, 45 C.F.R. § 86.71, not required because procedures provided inadequate relief).[24] For

---

**23.** Section 27.71(b)(4) states:

Each operator at an airport receiving any Federal financial assistance shall assure that adequate assistance is provided incident to enplaning and deplaning handicapped persons. Within three years from the effective date of this part, recipients operating terminals at air carrier airports that are not equipped with jetways or passenger lounges for boarding and unboarding shall assure that there are lifts, ramps, or other suitable devices, not normally used for movement of freight, are available for enplaning and deplaning wheelchair users.

49 C.F.R. § 27.71(b)(4) (1980).

**24.** In Cannon v. University of Chicago, 441 U.S. 677, 706–708, n.41, 99 S.Ct. 1946, 1962–63 n.41, 60 L.Ed.2d 560 (1979), the Supreme Court held that exhaustion of administrative remedies adopted to enforce Title IX of the Education Amendments of 1972 is not required before one files a private action under Title IX because the administrative procedures did not assure participation of individual complainants or individualized relief, and individual complainants "cannot assure themselves that the administrative process will reach a decision on their complaints within a reasonable time."

In Kling v. County of Los Angeles, 633 F.2d 876, 879 (9th Cir. 1980), the Ninth Circuit considered the applicability of the exhaustion doctrine to actions brought under Section 504. HHS has adopted the enforcement procedures of Title VI of the Civil Rights Act of 1964, 45 C.F.R. §§ 80.6–80.10, for enforcement of Section 504. After citing Cannon, the Court concluded that "[t]he administrative procedures under Section 504 are the same as those under

Title IX," see 45 C.F.R. § 84.61, and held, therefore, that exhaustion of Section 504 administrative remedies is not required before one files a private action thereunder.

There is a split of authority on this issue. See Camenisch, 616 F.2d 127 (5th Cir. 1980), vacated and remanded on other grounds, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) (Cannon reasoning applies to administrative enforcement procedures under Section 504; exhaustion inapplicable); Lloyd, 548 F.2d 1277 (7th Cir. 1977) (exhaustion not required); accord, Patton v. Dumpson, 498 F.Supp. 933 (S.D.N.Y.1980); N.Y. State Ass'n v. Carey, 466 F.Supp. 479 (S.D.N.Y.1978), aff'd, 612 F.2d 644 (2d Cir. 1979) (time of essence so no deference to administrative machinery); Whitaker v. Board of Higher Educ., 461 F.Supp. 99 (E.D.N.Y.1978); Michigan Paralyzed Veterans of America, 451 F.Supp. 7 (E.D.Mich.1977); Cruz, 84 F.R.D. 307 (D.P.R.1979); see also Larry P. v. Riles, 495 F.Supp. 926, 962–63 (N.D.Cal.1979) (exhaustion not required where it would have been "meaningless and superfluous"); Upshur v. Love, 474 F.Supp. 332 (N.D.Cal.1979) (exhaustion not required where administrative remedies were unavailable prior to filing of private action). But see Doe v. New York Univ., 442 F.Supp. 522 (S.D.N.Y.1978); Crawford v. University of N.C., 440 F.Supp. 1047 (M.D.N.C.1977); NAACP v. Wilmington Medical Center, 426 F.Supp. 919, 924–25 (D.Del. 1977). Many courts have addressed Section 504 claims without discussing or requiring administrative exhaustion. See, e. g., Davis v. Bucher, 451 F.Supp. 791 (E.D.Pa.1978); Barnes v. Converse College, 436 F.Supp. 635 (D.S.C. 1977); Duran v. City of Tampa, 430 F.Supp. 75

the same reasons, the doctrine of primary jurisdiction does not apply. *See Cruz v. Collazo,* 84 F.R.D. 307, 313 (D.P.R.1979) (doctrines of primary jurisdiction and exhaustion not applicable to Section 504 action); *Whitaker,* 461 F.Supp. at 108–9 (primary jurisdiction and exhaustion inapplicable where Section 504 administrative enforcement mechanism ineffective for personal redress); *cf. Rosado,* 397 U.S. at 405–6, 90 S.Ct. at 1214–15, 25 L.Ed.2d 442 (doctrines inapplicable where welfare recipients could not "trigger" or "participate" in HEW proceedings involving the review of state welfare programs); *Chaplin v. Consolidated Edison Co.,* 482 F.Supp. 1165, 1174 n.11 (doctrine of primary jurisdiction inappropriate for same reasons as exhaustion doctrine in Section 793 action). *But see Stubbs v. Kline,* 463 F.Supp. 110 (W.D.Pa. 1978) (doctrine of primary jurisdiction applied to action by handicapped child and mother under Section 504); *Drennon v. Philadelphia General Hospital,* 428 F.Supp.

809 (E.D.Pa.1977) (doctrine of primary jurisdiction applied to action under Sections 503 and 504).[25]

The only allegation in the amended complaint concerning the availability of enplaning equipment at LAX is the statement made by Garcia to plaintiffs that Aero Mexico had a policy not to carry wheelchair users because it was unable to get them on and off the plane. There is no allegation that the equipment mandated by § 27.-71(a)(2)(v) was not provided at the Aero Mexico terminal on the day of plaintiffs' scheduled flight. Rather, plaintiffs contend that the City not only had a duty to ensure that enplaning equipment was available, but also to ensure that Aero Mexico utilized such equipment. Neither the Act nor the regulations expressly impose such an additional duty upon recipient airport operators. Nor will this Court infer such a substantial duty, which could potentially conflict with the DOT's intent not to regulate the provi-

(M.D.Fla.1977); *Bartels v. Biernat,* 427 F.Supp. 226 (E.D.Wis.1977).

The Supreme Court has not expressly ruled on whether exhaustion of administrative remedies is necessary before one files a private action under Section 504. However, the Court's ruling in *Campbell,* 434 U.S. 808, 98 S.Ct. 38, 54 L.Ed.2d 65, directing the district court to decide the case under Section 504, suggests that any attempt to subject plaintiffs' claim to prior administrative review was precluded. *See also University of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) (remanded to district court for determination on the merits.

**25.** In *Drennon,* plaintiff brought an *action* under Sections 503 and 504. Regulations had been promulgated under Section 503 but not yet under Section 504. The court determined that primary jurisdiction was applicable to the Section 503 claim. Because common issues permeated plaintiffs' claims under both sections, the court concluded that the invocation of the doctrine was still appropriate. 428 F.Supp. at 818.

In *Stubbs,* the court considered the applicability of primary jurisdiction to a Section 504 claim after HEW had promulgated regulations to implement that Section. The court acknowledged that a complainant is not a party to proceedings brought under the Section 504 regulations. However, the court noted that a complainant can *petition* to appear amicus curiae. The court then concluded that primary jurisdiction was applicable where the "crux of the

dispute concerns the nature and scope of duties which apply to [plaintiff]." 463 F.Supp. at 117.

To the extent that *Stubbs* stands for the proposition that possible participation by complainants as amicus curiae assures adequate participation in the administrative enforcement of individual claims, this Court finds it unpersuasive. In *Kling,* the Ninth Circuit concluded that the administrative procedures under Section 504 provides "inadequate relief" for private claimants, 633 F.2d at 879. The Court neither discussed nor applied the doctrine of primary jurisdiction. The Court relied on the reasoning of *Cannon,* which in turn, *cited Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), where the Supreme Court held that neither the doctrine of exhaustion nor that of primary jurisdiction applied where available administrative remedies were inadequate.

Even assuming that there may be instances where some or all of the issues presented should first be deferred to an agency because the interests both in uniformity and consistency of regulation, and in informing the court with the agency's expert and specialized knowledge, override the inadequacies of available administrative remedies, this is not such a case. For a discussion of the interests served by the doctrine of primary jurisdiction, *see Nader,* 426 U.S. 290, 303–4, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976); *Writers Guild of America,* 609 F.2d 355.

sion of air transportation or access to airplane interiors, and with future CAB regulations governing those areas.[26]

Thus, under either theory of liability proffered by plaintiffs, they have failed to state a claim against the City upon which relief may be granted under Section 504. Therefore, plaintiffs' claims under Section 504 are dismissed as to defendant City.

## VI

■ Plaintiffs allege that the City has violated their rights under the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983, by permitting Aero Mexico to deny its services and facilities to handicapped persons solely on the basis of their disability. An action brought by a handicapped person charging arbitrary, unreasonable and discriminatory classification of handicapped persons is cognizable under both § 1983 and the Fourteenth Amendment. *See Gurmankin v. Costanzo,* 556 F.2d 184 (3d Cir. 1977), *further proceedings,* 626 F.2d 1115 (3 Cir. 1980), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1375, 67 L.Ed.2d 352 (1981); *King-Smith v. Aaron,* 455 F.2d 378 (3d Cir. 1972); *Upshur,* 474 F.Supp. 332; *Stubbs,* 463 F.Supp. 110; see *also Drennon,* 428 F.Supp. 809; *Frederick L. v. Thomas,* 408 F.Supp. 832 (E.D.Pa. 1976), *aff'd,* 557 F.2d 373 (3d Cir. 1977).

■ Unlike plaintiffs Alvin Nodleman and Stockhammer, however, Matty Nodleman has not alleged that she is handicapped. Nor has she alleged any facts that establish the need to allow her to assert the constitutional rights of others. Therefore, because Matty Nodleman has failed to allege facts sufficient to establish that she has standing to assert the claim alleged under the Fourteenth Amendment and § 1983, her claims thereunder are dismissed without prejudice.

■ Where a claim is presented under either § 1983 or the Fourteenth Amendment, plaintiffs must show, as a threshold matter, that state action is involved. *See, e. g., Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). Defendant City argues that because the only discriminatory conduct alleged in this case is the refusal of Aero Mexico, a private entity, to provide flight service to handicapped individuals, plaintiffs have failed to allege facts sufficient to establish state action.

■ The Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." *Shelley,* 334 U.S. at 13, 68 S.Ct. at 842, 92 L.Ed. 1161. It does proscribe, however, state action of "every kind" that operates to deny any citizen the equal protection of the laws. *Civil Rights Cases,* 109 U.S. 3, 11, 3 S.Ct. 18, 21, 27 L.Ed. 835 (1883). "Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." *Gilmore v. City of Montgomery, Alabama,* 417 U.S. 556, 565, 94 S.Ct. 2416, 2422, 41 L.Ed.2d 304, *quoting Evans v. Newton,*

---

**26.** *See* footnote 20. The DOT has indicated that § 27.71(a)(2)(v) is intended to require that airport operators ensure that enplaning equipment is provided either directly or indirectly, through their leasing arrangements with the airlines:

> the final rule retains, requirements relating to boarding devices ... which are owned and operated by the airlines at most airports .... Recently, the CAB advised the [DOT] that a rulemaking project was underway to implement these sections. Action by the CAB which would ensure the uniform provision of services and equipment by the airlines, for handicapped persons, could obviate the need for *airport operators to provide the same services directly or indirectly, through their leasing arrangements with the airlines.*

> Accordingly, as the CAB rules become final, the [DOT] will review the requirements presently contained in § 27.71 to determine whether these provisions are duplicative or unnecessary, and if appropriate, will amend the rule to modify or remove such requirements. [emphasis supplied].

"Supplemental Information to § 27.71," 44 Fed. Reg. 31442, 31451 (May 31, 1979). However, there is no indication that the DOT intended to impose a duty upon airport operators to ensure that the airlines utilize such equipment, or liability for the airlines' failure to utilize such equipment.

382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966). Plaintiffs allege that the leasing arrangement between the City and Aero Mexico, with respect to space and facilities at LAX, establishes the requisite state action in this case.

The circumstances of each case must be examined and weighed to determine whether there is sufficient state involvement in the acts of a private party so as to constitute state action. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Where, as here, the state has made public facilities available to a private entity, and the state has not clearly directed the otherwise private act of discrimination, the state must have "so far insinuated itself into a position of interdependence" with the private entity

> that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so "purely private" as to fall without the scope of the Fourteenth Amendment.

*Burton*, 365 U.S. at 725, 81 S.Ct. at 862, 6 L.Ed.2d 45. *See Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589, 594, (3d Cir. 1979), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980); *Ludtke v. Kuhn*, 461 F.Supp. 86, 94 (S.D.N.Y.1978).[27]

Such "interdependence", or "symbiotic relationship," *see Moose Lodge No. 107*, 407 U.S. at 176, 92 S.Ct. at 1972, 32 L.Ed.2d 627, may exist where the discriminatory acts occurred on property owned by a governmental entity and leased to a private party. *See Burton*, 365 U.S. at 723, 81 S.Ct. at 861, 6 L.Ed.2d 45, (state action where privately operated restaurant constituted a "physically and financially integral" and "indispensable part" of state-lessor's plan to operate self-sustaining automobile parking building); *see also Turner v. City of Memphis, Tennessee*, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962) (privately operated restaurant, a lessee of a municipal airport, conceded it was subject to the strictures of the Fourteenth Amendment); *Ludtke v. Kuhn*, 461 F.Supp. 86 (S.D.N.Y.1978) (city involvement with stadium and its lease arrangements with professional baseball team were such that baseball commissioner's policy constituted state action).

27. Where the alleged unconstitutional act involves a heavily regulated entity, the Supreme Court has expressed a different formulation of the state action test:

> the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974) (State not sufficiently connected with challenged termination of appellant's electric service to make utility company's conduct attributable to the State for Fourteenth Amendment purposes); *see Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (no state action merely because private fraternal organization's beverage bar was licensed and regulated by the State, where alleged discrimination involved the private use of private property).

In *Stevens v. Braniff Airways, Inc.*, 490 F.Supp. 231 (D.Minn.1980), the plaintiffs alleged that regulation by the Federal Aviation Administration and the lease between the airline and municipal airport constituted state action. Thus, in *Stevens*, plaintiffs may have been able to establish state action either by demonstrating the existence of a *Burton* symbiotic relationship between the public airport and the airline, or a sufficiently close nexus between the state and the challenged action of the regulated entity.

In the present case, plaintiffs have not alleged state action based on Aero Mexico's status as an entity heavily regulated by the federal government. Nor have plaintiffs alleged any state or municipal regulation of Aero Mexico. Regulation by the federal government probably would not justify the granting of relief against a state subdivision, as is sought by plaintiffs. In contrast to the plaintiffs in *Moose Lodge No. 107* and *Jackson*, who sought to establish state action based on the state government's regulation in order to gain relief against otherwise private actors, the plaintiffs' allegation of state action here is based solely on the leasing arrangement providing for the private use of public facilities. Thus the test as formulated in *Burton* is appropriate. *See Gilmore v. City of Montgomery, Alabama*, 417 U.S. 556, 574, 94 S.Ct. 2416, 2426, 41 L.Ed.2d 304 (1974). In any event, application of the state action test as formulated in *Jackson* would not alter this Court's ruling on defendant City's motion to dismiss for failure to state a claim.

A motion to dismiss for failure to state a claim should not be granted "unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102, 21 L.Ed.2d 80. It cannot now be said with certainty that there are no facts upon which state action can be established in this case. "Only by sifting facts and weighing circumstances can be nonobvious involvement of the State in private conduct be attributed its true significance." *Burton,* 365 U.S. at 722, 81 S.Ct. at 860, 6 L.Ed.2d 45. A determination of whether a *Burton* symbiotic relationship exists in this case requires consideration of the relationship between the City and Aero Mexico and the arrangements between them. It would be premature to dismiss a claim where the plaintiffs allege state action and a lessor-lessee relationship between a public airport and a private entity. *See Stevens v. Braniff Airways, Inc.,* 490 F.Supp. 231, 233–34 (D.Minn.1980) (sex discrimination action in which plaintiffs alleged that regulation by the Federal Aviation Administration and a lease between airline and municipal airport constituted state action; motion to dismiss denied); *Masco v. United Airlines,* 13 FEP Cas. 1549 (W.D.Pa.1976) (sex discrimination action against airlines; motion for judgment on pleadings denied because of need to evaluate facts related to allegation of state action based on airline's lease of public space), *and,* 13 FEP 1552 (W.D.Pa.1976) (upon evaluation of facts, no state action found). Although it may be doubted that the requisite state action can be established, *see Stevens,* 490 F.Supp. at 234, Alvin Nodleman and Stockhammer have stated a claim upon which relief can be granted against the City under § 1983 and the Fourteenth Amendment.[28]

## VII

Therefore, IT IS HEREBY ORDERED that defendants City's motion to dismiss be hereby GRANTED as to Matty Nodleman, Alvin Nodleman, and Nathan Stockhammer's claims against it under Section 504 of the Act;

IT IS FURTHER ORDERED that Matty Nodleman's claim against Aero Mexico under Section 504 be hereby DISMISSED without prejudice;

IT IS FURTHER ORDERED that defendant City's motion to dismiss be hereby GRANTED as to Matty Nodleman's claims against it under § 1983 and the Fourteenth Amendment;

IT IS FURTHER ORDERED that defendant City's motion to dismiss be hereby DENIED as to Alvin Nodleman and Nathan Stockhammer's claims against it under § 1983 and the Fourteenth Amendment.

---

28. In both *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), and *Ludtke v. Kuhn,* 461 F.Supp. 86 (S.D.N.Y.1978), the issue was whether relief could be granted against an otherwise private entity, where state action was based on an alleged symbiotic relationship with a state entity. *Burton* (declaratory judgment in the form of injunctive relief sought against restaurant-lessee of public parking structure); *Ludtke* (action dismissed as to City defendants because complete relief could be afforded by an order directed solely at private defendants, and, therefore the City defendants were unnecessary parties). However, in *Gilmore,* the Supreme Court indicated that relief against a City defendant may be appropriate where there is a *Burton* symbiotic relationship between it and the otherwise private entity. 417 U.S. at 573–75, 94 S.Ct. at 2426–27, 41 L.Ed.2d 304 (declaratory and injunctive relief sought against City concerning use of public park facilities by private groups). *See Burton* 365 U.S. at 725, 81 S.Ct. at 862 ("[b]y its inaction, the [Parking] Authority, and through it the State .... must be recognized as a joint participant in the challenged activity); *Ludtke* at 93 (where "direct perpetrator," through a private entity, is so "entwined" with an agency of the state, that agency "must be deemed responsible for the private entity's acts") (*quoting Burton*); *see also* L. Tribe, supra, § 18–3 at 1160 (discussing *Burton*: "the parking authority—a government agency—could be held equally responsible with the restaurateur for the latter's decision to discriminate").

Assuming that plaintiffs establish a *Burton* symbiotic relationship and a constitutional violation, the Court expresses no opinion at this time as to whether it would be necessary or appropriate to grant relief against the City. Nor does the Court reach at this time the issue of whether the Eleventh Amendment of the United States Constitution would bar an award of damages against the City, an issue not raised by defendant City.